*726 OPINION OF THE COURT
Ira B. Harkavy, J.
"Up and down the City Road,
In and out the Eagle,
That’s the way the money goes—
Pop goes the Weasel!”
W. R. Mandale
Pop Goes the Weasel (c. 1853)
Plaintiff, Kenneth Walcott, alleges that on November 1, 1985, he sent his October 19, 1985 paycheck in the sum of $359.05 together with a Crossland Savings Bank money order in the sum of $251.54 to Midatlantic Mortgage Company in payment of his November 1985 mortgage. He claims he signed his name to the back of the check and placed his mortgage number and the Midatlantic mailing sticker on the back of the check. He claims he then deposited the two checks in an envelope directed to Midatlantic Mortgage Company and placed the check in a United States postal box.
The copy of the check, introduced into evidence, shows Mr. Walcott’s indorsement and the mortgage number 603052, but shows no sign of the sticker. It further shows that it was cashed by third-party defendant Bilko Check Cashing Corp. (Bilko) on November 4, 1985 and deposited into the Bilko account at defendant Manufacturers Hanover Trust (Manufacturers Hanover) on November 5, 1985.
In mid-November 1985, Mr. Walcott received a notice from Midatlantic that he was late in the November payment of his mortgage. He inquired and found that his paycheck had been cashed on or about November 4, 1985 at Bilko who in turn deposited the check in their account at Manufacturers Hanover. The Crossland money order was never cashed and it was stopped by Mr. Walcott on or about November 22, 1985 and replaced by a new money order at that time.
Plaintiff claimed that an intervening thief stole the check and then cashed it at third-party defendant Bilko, who in turn negotiated the check by depositing it in their account at Manufacturers Hanover. The check was finally cleared through Citibank and charged to the account of the original payor, the New York City Transit Authority.
An employee of Manufacturers Hanover testified that third-party defendant Bilko had an account at the bank. She further testified that a review of the check showed that Bilko had deposited the check at Manufacturers Hanover in the *727 Bilko account. Additional testimony revealed that once a check is deposited in the Bilko account, the bank waits 3 to 5 days for the check to clear and thereafter Bilko may use the proceeds.
The store manager of Bilko had testified previously in a prior trial of this case before this court which ended in a mistrial. Her testimony from the prior trial was incorporated on consent of all parties into the retrial. She testified that in order for a government check to be cashed, two pieces of identification are required, usually an employee identification card containing an individual’s Social Security number and a driver’s license. She further testified that the person presenting the check in question must have had such identification since the notations as to the calculation of the check-cashing fees on the front of the check indicate that identification was shown.*
The issue presented to this court is whether plaintiff’s indorsement of his paycheck was such as to be a special or restrictive indorsement, thus limiting the negotiation of the instrument or did it have the effect of creating a bearer instrument.
SPECIAL INDORSEMENT
Uniform Commercial Code § 3-204 (1) defines a special indorsement as being one that "specifies the person to whom or to whose order it makes the instrument payable. Any instrument specially indorsed becomes payable to the order of the special indorsee and may be further negotiated only by his indorsement.”
Examination of the back of the check, a photocopy of which, as previously stated, was introduced into evidence, reveals that Mr. Walcott did not specify any particular indorsee. In order for the alleged attached sticker to have served that purpose it must have also complied with UCC 3-202 (2): "An indorsement must be written by or on behalf of the holder and on the instrument or on a paper so firmly affixed thereto as to become a part thereof.” The back of the check shows no sticker attached at all. Even if it had originally been affixed thereto, as plaintiff claims, it obviously became detached easily, thus failing to meet the indorsement requirements under the UCC to constitute a special indorsement.
*728 RESTRICTIVE INDORSEMENT
As to the numbers written underneath plaintiffs signature, they did not have the effect of restricting plaintiffs indorsement.
"An indorsement is restrictive which either
"(a) is conditional; or
"(b) purports to prohibit further transfer of the instrument; or
"(c) includes the words 'for collection’, 'for deposit’, 'pay any bank’, or like terms signifying a purpose of deposit or collection; or
"(d) otherwise states that it is for the benefit or use of the indorser or of another person.” (UCC 3-205.)
This section of the Uniform Commercial Code is very specific. The series of numbers representing plaintiffs mortgage account was insufficient to restrict negotiation of plaintiffs check.
BLANK INDORSEMENT
Plaintiffs indorsement had the effect of converting the check into a bearer instrument. The series of numbers having no restrictive effect, Mr. Walcott indorsed the check in blank, or otherwise stated, he simply signed his name. A blank indorsement under UCC 3-204 (2) "specifies no particular indorsee and may consist of a mere signature”. Additionally, "[a]n instrument payable to order and indorsed in blank becomes payable to bearer and may be negotiated by delivery alone”. Consequently, since plaintiff failed to limit his blank indorsement, the check was properly negotiated by delivery to third-party defendant Bilko and properly cashed by them.
Judgment for the defendant Manufacturers Hanover Trust dismissing the complaint. Judgment for third-party defendant Bilko Check Cashing Corp. dismissing the complaint.

 This identification procedure creates doubt as to whether the check was actually stolen.