■ M.G. SALES, INC., Respondent-Appellant, v CHEMICAL BANK, Appellant-Respondent and Third-Party Plaintiff, et al., Defendants and Third-Party Plaintiffs, et al., Third-Party Defendants.—Order of the Supreme Court, New York County (Shirley Fingerhood, J.), entered on or about February 2, 1989, which, *inter alia,* denied the motion by defendant Chemical Bank for an order granting it summary judgment dismissing the complaint against it, is unanimously modified, on the law, the motion by defendant Chemical Bank granted, and the complaint is dismissed as against it, and otherwise affirmed, with costs and disbursements payable to defendant-appellant.

In November 1981, Marc Gardner, the president of the plaintiff corporation, M.G. Sales, Inc., made out two checks on its account at Chemical Bank. The checks were both in the amount of $6,000 and were payable to, signed and endorsed by Gardner. Gardner did not remember whether or not he dated the checks. Apparently, he lost both checks. Consequently, on November 16, 1981, he went to defendant Chemical Bank and obtained two stop-payment orders which gave November 10, 1981 as the date of the checks. The stop-payment orders were by their terms valid for a period of six months. Gardner did not obtain renewals of the stop-payment orders.

In January and February 1983, Leon Fried, the third-party defendant, deposited the checks in his account in another branch of Chemical Bank, and Chemical paid the proceeds of the checks to him.

Plaintiff commenced this action against Chemical Bank, one

of its officers, Charles Schildt, and the bank tellers who accepted the checks. The first two causes of action allege that Chemical Bank violated the stop-payment orders, in derogation of its fiduciary obligation, and failed to comply with the Uniform Commercial Code and the applicable banking laws and rules. The third and fourth causes of action asserted against Mr. Schildt and the fifth cause of action against the individual bank tellers are not involved on this appeal.

The IAS court denied various motions by the parties seeking summary judgment. It found that Gardner signed and endorsed the undated checks, then lost them, and failed · to renew the stop-payment order. It found, further, that the fact that the checks were torn and tattered, and that the date on one appeared to be altered, did not, pursuant to UCC 3-114 (1) and (3), impair the acceptability of an otherwise valid check. However, the court concluded that a question of fact existed as follows:

"The allegation that the bank did not accept doubly endorsed checks for deposit is denied [by the bank]; however, that denial creates a question of fact for trial as to whether the bank followed its standards.

"If, as it appears, the bank's practices were not followed in that respect (Exhibit G to plaintiff's cross-motion) [a sign allegedly from a Chemical Bank branch stating that Chemical Bank does not accept double-endorsed checks] the plaintiff may be able to prevail".

Plaintiff's complaint alleges essentially that the defendant bank failed to comply with the written stop-payment orders signed by Gardner on November 16, 1981, and failed to follow the bank's own directive not to accept double-endorsed checks. However, the complaint should have been dismissed insofar as it alleged that the bank violated or failed to honor the stop-payment orders. The record conclusively establishes that both stop-payment orders were signed on November 16, 1981, and that by their terms they were effective for six months unless renewed in writing. Further, Gardner failed to renew the stop-payment orders and the checks were presented to the bank after the expiration of the stop-payment orders. Since no stop-payment directive was in effect when the checks were presented to the bank, no violation of those orders occurred. Any claim by plaintiff that an oral representation was made that no renewal was necessary is completely negated by the contrary provisions of the written stop-payment orders. Accordingly, defendant was entitled to summary judgment dismissing that portion of the complaint seeking recovery for the

defendant bank's alleged violation of the plaintiff's stop-payment order, as plaintiff failed to meet its burden of establishing payment contrary to a binding stop-payment order (see, UCC 4-403 [3]).

UCC 3-204 (2) provides: "An indorsement in blank specifies no particular indorsee and may consist of a mere signature. An instrument payable to order and indorsed in blank becomes payable to bearer and may be negotiated by delivery alone until specially indorsed." Thus, the two checks were bearer paper when lost by Mr. Gardner, as they were signed, payable to, and endorsed in blank by him. Gardner stated also that the checks were undated when he lost them. UCC 3-114 (1) provides that "[t]he negotiability of an instrument is not affected by the fact that it is undated, antedated or postdated". Subdivision (3) of section 3-114 provides that "[w]here the instrument or any signature thereon is dated, the date is presumed to be correct". The Comment to section 3-114 provides that "[a]ny fraud or illegality connected with the date of an instrument does not affect its negotiability, but is merely a defense" to payment to the holder. While the IAS court noted that the checks were torn and it appeared that the date on one check was altered, since it was admitted by the plaintiff that the checks were undated when lost, and there was no conclusive showing that the dates were altered, the date could properly have been assumed to have been correct. Moreover, if those dates were viewed as correct, neither check would have appeared stale when presented. In any event, UCC 4-404 provides that "[a] bank is under no obligation to a customer having a checking account to pay a check, other than a certified check, which is presented more than six months after its date, but it may charge its customer's account for a payment made thereafter in good faith". Thus, the bank committed no error in accepting and paying out on the checks.

The IAS court found a question of fact existed as to whether the bank paid the checks in violation of its own directive against acceptance of double-endorsed checks. However, the only evidence presented that such a policy existed was a sign from an unidentified Chemical Bank branch stating that the bank did not accept double-endorsed checks, without any indication as to when the sign was posted or obtained. Chemical, however, submitted the affidavit of an officer responsible for the branch that accepted the checks. He stated that the bank's policy limiting the acceptance of double-endorsed checks for deposit commenced in 1984 and that signs to that effect were put up in August of 1984. This affidavit was

uncontradicted by the plaintiff and conclusively established that Chemical had no policy against the acceptance of double-endorsed checks when the checks were presented in 1983. Further, as the UCC contains no prohibition against the acceptance of double-endorsed checks, it was not error for the bank to accept the checks here in question *(see, e.g.,* UCC 3-204 *et seq.).* Concur—Carro, J. P., Milonas, Asch, Ellerin and Rubin, JJ.