A03A1952, A03A1953. GERBER & GERBER, P.C. v. REGIONS BANK; and vice versa.
(596 SE2d 174)

MILLER, Judge.

Over a period of two years, an employee of the Gerber & Gerber, P.C. law firm (G&G) stole from G&G some cashier's checks (endorsed in blank) and some checks payable to G&G (on which she forged G&G's endorsement) and deposited the checks into her personal account at Regions Bank, where G&G also maintained its accounts. Alleging that Regions Bank had acted negligently in accepting the checks for deposit, G&G sued the bank to recover the money lost. The court entered summary judgment in favor of Regions Bank on the cashier's checks but held material issues of fact precluded summary judgment on the forged checks. Both parties appeal the portions of the judgment adverse to their interests. Discerning no error, we affirm.

"Summary judgment is proper when there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. OCGA § 9-11-56 (c)." *Matjoulis v. Integon Gen. Ins. Corp.*, 226 Ga. App. 459 (1) (486 SE2d 684) (1997). We review the grant of summary judgment de novo, construing the evidence in favor of the nonmovant. Id.

Construed in favor of G&G, the evidence showed that Cynthia Stafford worked for a law firm as a real estate closing secretary. She stole money from that firm through forging the firm's endorsement on checks made payable to the firm (received at the real estate closings) and depositing them into her personal account. When the forgery was discovered, she confessed and worked out an arrangement to continue at the firm at a reduced salary to repay the stolen money. She then stole a second time and the firm closed. The aggregate amount stolen was about $130,000.

Prior to the firm closing, its principal had merger discussions with G&G, during which the principal disclosed some of Stafford's

theft and forgery to Sanford Gerber of G&G. Nevertheless, when the merger talks failed, the principal recommended that G&G hire Stafford because of her competency as a real estate closing secretary and because she had rehabilitated. Mr. Gerber interviewed Stafford and felt also that she had reformed. He hired her but warned her that he knew of her prior theft and that if she stole from G&G, he would make sure she went to jail.

Stafford worked as a real estate closing secretary at G&G for over two years. During this time, she stole 29 cashier's checks received by G&G during real estate closings, which checks the payees had endorsed in blank during the closings. She then endorsed these checks herself and deposited them into her personal account at Regions Bank. She also stole ten checks made payable to G&G, which she endorsed in blank on behalf of G&G (forging Sanford Gerber's signature). She then endorsed the forged checks in her own name and deposited them into her personal account at Regions Bank. Throughout this time, G&G had its escrow and other accounts at Regions Bank and deposited thousands of checks amounting to $150 million to $200 million into those accounts every year. G&G would endorse each deposited check with a rubber stamp for deposit into the G&G account.

The thefts were made possible because G&G did not restrictively stamp the checks immediately at closing but waited until sometime after the closing, during which interim period the checks were kept in an open file left in an area accessible to all G&G employees. Also, at times Stafford was allowed to be the person to stamp and account for the checks. The amount stolen approximated $180,000. Stafford confessed to the thefts, later pleading guilty to criminal charges and receiving a thirty-year sentence (five years to serve). She claimed to have spent the money.

G&G sued Regions Bank to recover the stolen $180,000, alleging counts of conversion and negligence in that the bank improperly accepted the forged checks as well as the true-endorsed cashier's checks into Stafford's personal account. Regions Bank moved for summary judgment, arguing that as a matter of law it had acted appropriately under the Uniform Commercial Code in accepting the checks. The trial court granted the motion insofar as it pertained to the true-endorsed cashier's checks but found that material issues of fact (particularly regarding the parties' comparative negligence) precluded summary judgment as to the forged checks. G&G appealed the partial grant of summary judgment, and Regions Bank cross-appealed the partial denial of summary judgment.

1. With regard to the blank-endorsed cashier's checks, the court correctly granted summary judgment in favor of the bank. Under the

applicable portion of OCGA § 11-3-420 (a), a bank converts an instrument if the bank "makes or obtains payment with respect to the instrument for a person not entitled to enforce the instrument or receive payment." The holder of an instrument is a person entitled to enforce the instrument, even though the person is in wrongful possession of the instrument. OCGA § 11-3-301. A person is a holder of a negotiable instrument if that person possesses the instrument and the instrument is payable to bearer. OCGA § 11-1-201 (20). An instrument is deemed payable to bearer if it is endorsed in blank (i.e., not specially endorsed). OCGA § 11-3-205 (b). "When indorsed in blank, an instrument becomes payable to bearer and may be negotiated by transfer of possession alone until specially indorsed." Id.; see OCGA § 11-3-201 (b).

Accordingly, when here the payees of the cashier's checks endorsed the checks in blank, the checks then became bearer paper and could — similar to cash — be transferred by possession alone. See *La Junta State Bank v. Travis*, 727 P2d 48, 51, n. 2 (Colo. 1986); *M. G. Sales, Inc. v. Chemical Bank*, 161 AD2d 148, 150 (554 NYS2d 863) (1990); *Walcott v. Manufacturers Hanover Trust*, 133 Misc.2d 725, 728 (507 NYS2d 961) (Civ. Ct. 1986). Sanford Gerber even admitted to this well-known fact in his deposition. Thus, Regions Bank quite properly accepted the endorsed-in-blank cashier's checks from the person in possession of them and deposited the checks into that person's account. The court did not err in granting Regions Bank summary judgment on G&G's causes of action arising out of these checks.

2. More problematic, however, are the forged checks. Although these were also endorsed in blank, the payee's signatures were forgeries and were therefore ineffective as endorsements by the payee. See OCGA § 11-3-403 (a). Accordingly, Stafford was not entitled to enforce the instruments or to receive payment thereunder, and Regions Bank converted the instruments when it made or obtained payment on them by allowing them to be deposited into Stafford's personal account. See OCGA § 11-3-420 (a).

Regions Bank argues that G&G failed to exercise ordinary care, which substantially contributed to the making of the forged signatures. Regions Bank contends that accordingly G&G was precluded under OCGA § 11-3-406 (a) from asserting the forgery against the bank. Indeed, where some evidence shows that the corporate payee acted negligently in failing to prevent the forgery of its endorsement, a jury should decide whether that negligence substantially contributed to the making of the forgery — but only if the defendant bank *in good faith* paid the instrument or took it for value or for collection. See OCGA § 11-3-406 (a); cf. *Trust Co. of Ga. Bank &c. v. Port Terminal*

*&c. Co.*, 153 Ga. App. 735, 739-741 (1) (266 SE2d 254) (1980) (interpreting somewhat similar language found in the predecessor statute to OCGA § 11-3-406 (a)). In 1996 the General Assembly amended the applicable definition of "good faith" to mean "honesty in fact and the observance of reasonable commercial standards of fair dealing." OCGA § 11-3-103 (a) (4); see Ga. L. 1996, pp. 1306, 1340, § 3. Thus, even assuming the evidence established as a matter of law that G&G's actions substantially contributed to the making of the forgeries at issue, the question here is whether there is a disputed issue of fact as to Regions Bank's good faith (its honesty in fact and its observance of reasonable commercial standards of fair dealing) in regard to its accepting the forged checks as deposits in Stafford's account.

Regions Bank has presented evidence that it knew nothing of the possible forgery at the time it accepted the checks. The first Regions Bank learned of the forgery was from G&G after the fact. G&G has presented no evidence to contradict this, and thus the undisputed evidence shows Regions Bank's honesty in fact. Cf. *Stebbins v. Ga. Power Co.*, 252 Ga. App. 261, 263-264 (1) (c) (555 SE2d 906) (2001).

However, disputed evidence does exist on the question of whether Regions Bank's actions were in observance of reasonable commercial standards of fair dealing. Significantly, reasonable commercial standards *of fair dealing* are different from reasonable commercial standards *of due care.* "Although fair dealing is a broad term that must be defined in context, it is clear that it is concerned with the fairness of conduct rather than the care with which an act is performed. Failure to exercise ordinary care in conducting a transaction is an entirely different concept than failure to deal fairly in conducting the transaction." UCC § 3-103, Official Comment 4 (2003);[1] see *Maine Family Fed. Credit Union v. Sun Life Assurance Co. of Canada*, 727 A2d 335, 342 (III) (B) (2) (Me. 1999).

Although some older Georgia cases define the reasonable commercial standards of due care (see, e.g., *Trust Co. Bank v. Henderson*, 258 Ga. 703, 704 (1) (373 SE2d 738) (1988); *Thornton & Co. v. Gwinnett Bank &c. Co.*, 151 Ga. App. 641, 646-648 (4) (260 SE2d 765) (1979)), those addressing the newer language of reasonable commercial standards of fair dealing have not explained it in detail. See, e.g., *Stebbins*, supra, 252 Ga. App. at 263-264 (1) (c); *Charles Evans BMW,*

---

[1] "To determine the legislature's intent in enacting [a] provision [of the UCC], we consult the official comments accompanying the UCC. . . ." (Footnote omitted.) *Sun v. Mercedes Benz Credit Corp.*, 254 Ga. App. 463, 465 (562 SE2d 714) (2002); see also *Warren's Kiddie Shoppe v. Casual Slacks*, 120 Ga. App. 578, 580 (1) (171 SE2d 643) (1969) (official comments of the UCC should be given due consideration in determining the intent of the General Assembly in enacting the provisions verbatim).

*Inc. v. Williams*, 196 Ga. App. 230, 232-233 (2) (395 SE2d 650) (1990). The United States Court of Appeals for the Seventh Circuit referred to this standard as the "[a]voidance of advantage-taking." *State Bank of the Lakes v. Kansas Bankers Surety Co.*, 328 F3d 906, 909 (7th Cir. 2003). The Maine Supreme Court struggled at length with the issue, stating: "The most obvious question arising from the use of the term 'fair' is: fairness to whom? . . . If a holder is required to act 'fairly,' regarding all parties, it must engage in an almost impossible balancing of rights and interests." *Maine Family*, supra, 727 A2d at 343 (III) (B) (2). The Maine court then interpreted a different "fairness" standard of conduct than that required for due care in reaching its result in *Maine Family*. Id. at 343-344 (III) (B) (2). The court noted that a party may be found to act in good faith — even though negligently — if it acts fairly, but may be found to have acted not in good faith, i.e., unfairly, even though it complied with commercial standards of due care. Id. at 343; see *Any Kind Checks Cashed, Inc. v. Talcott*, 830 S2d 160, 165-166 (Fla. App. 2002). The U. S. Fourth Circuit took a similar tact, holding that evidence showing a lack of due care did not show a failure to comply with reasonable commercial standards of fair dealing. *Wachovia Bank v. Fed. Reserve Bank of Richmond*, 338 F3d 318, 322-323 (II) (A) (4th Cir. 2003). Focusing on the lack of evidence that what the bank did was unfair, the court affirmed summary judgment in favor of the bank. Id. at 323 (II) (A). Nevertheless, whether a party's conduct meets this "fairness" standard is ordinarily a question that must be resolved by the factfinder. *San Tan Irrigation Dist. v. Wells Fargo Bank*, 197 Ariz. 193, 197 (3 P3d 1113) (Ct. App. 2000); see *The Bank/First Citizens Bank v. Citizens & Assoc.*, 82 SW3d 259, 263 (Tenn. 2002).

In determining whether the conduct of Regions Bank complied as a matter of law with reasonable commercial standards of fair dealing, we note that *Henderson*, supra, 258 Ga. at 704 (1), upheld a jury verdict finding that a bank did not comply with reasonable commercial standards of due care when it accepted checks payable to a firm, which were endorsed in blank by a firm employee and deposited in his personal account at the bank. The firm had its account at the same bank, and "established practice for the negotiation of checks payable to this account was through the use of a restrictive endorsement stamp." Id. This irregularity should have caused the bank to inquire as to the propriety of the endorsements when the checks being deposited by the firm employee into his personal account were payable to the firm and had been endorsed in blank. Id.; see *Inventory Locator Svc. v. Dunn*, 776 SW2d 523, 527-528 (Tenn. App. 1989). "Where endorsements are irregular on their face, and when the draft is offered for deposit into the account of one not the payee, the bank has a duty to inquire to ascertain the authority of the depositor to

endorse and deposit the payee's check. [Cit.]" *Tifton Bank &c. Co. v. Knight's Furniture Co.*, 215 Ga. App. 471, 474 (1) (b) (452 SE2d 219) (1994). The Kansas Court of Appeals even held: "Barring exceptional circumstances, the general rule is that failure of a bank to inquire when an individual cashes a check made payable to a corporate payee and puts the money in his personal account is an unreasonable commercial banking practice *as a matter of law.* [Cits.]" (Emphasis supplied.) *Aetna Casualty &c. Co. v. Hepler State Bank*, 6 Kan. App. 2d 543, 551 (III) (630 P2d 721) (1981).

In light of these cases, we hold that it is at least a fact question whether Regions Bank violated the reasonable commercial standards of fair dealing when it violated known commercial banking practices by accepting checks made payable to G&G into Stafford's personal account. Since Regions Bank also serviced G&G's business accounts and therefore knew that G&G normally placed a restrictive endorsement stamp on checks made payable to G&G, Regions Bank was on heightened notice of the irregularity of the endorsements on the checks deposited by Stafford and therefore could be held to have dealt with G&G unfairly by not making inquiry into the legitimacy of those endorsements. Thus, whether Regions Bank acted in good faith in this matter is a question to be resolved by the jury, which means that its defense under OCGA § 11-3-406 (a) cannot be resolved on summary judgment.

Regions Bank also argues that it was a holder in due course under OCGA § 11-3-302 and therefore entitled to summary judgment on the claims asserted in the complaint. For Regions Bank to be a holder in due course, this statute requires that the bank have taken the instruments at issue "[i]n good faith." OCGA § 11-3-302 (a) (2) (ii). Since the same definition of good faith discussed above applies to this statute (see OCGA § 11-3-103 (a) (4)), the same disputed issues of fact also discussed above preclude Regions Bank on summary judgment from conclusively establishing its status as a holder in due course on the forged checks.

The trial court correctly denied Regions Bank summary judgment on the ten forged checks.

*Judgment affirmed in both cases. Smith, C. J., and Ruffin, P. J., concur.*

DECIDED FEBRUARY 13, 2004 —
RECONSIDERATION DENIED MARCH 3, 2004.

*Shivers & Associates, Terry L. Strawser*, for appellant.

*Parker, Hudson, Rainer & Dobbs, William J. Holley II, James S. Rankin, Jr., Ryan K. McLemore*, for appellee.