A05A0577. METZGER v. AMERICREDIT FINANCIAL
SERVICES, INC.
(615 SE2d 120)

BERNES, Judge.

Theresa Metzger appeals from an order entered by the Superior Court of Clayton County granting partial summary judgment to Americredit Financial Services, Inc. on her claim for conversion based on the alleged wrongful repossession of her vehicle. Metzger contends that the superior court erred by failing to conclude that she took her vehicle free of Americredit's security interest under the special good faith purchaser rule for goods covered by a certificate of title set forth in OCGA § 11-9-337 (1). We agree and reverse.[1]

The underlying facts are not in dispute. On or about October 1, 2002, Americredit repossessed a 1997 Ford Taurus from Metzger, who had purchased the vehicle from a used car dealership in March 2002. Metzger did not realize that Americredit had a prior lien on the vehicle or that it had been repossessed. As a result, she reported the vehicle as stolen to the police.

Metzger later learned that Americredit had obtained a security interest in the vehicle in 1998, when the company financed James Strong's purchase of the vehicle in the State of New York. The New York certificate of title issued to Strong reflected Americredit's security interest in the vehicle.

Strong later moved from New York to Georgia and submitted a "MV1Z" application form, along with the existing title and the required fee, to the Cobb County tag agent for the Georgia Department of Motor Vehicles ("DMV") in order to convert the existing New York certificate of title to a Georgia one. The DMV processed the application, but as a result of a clerical data entry error, the DMV issued a Georgia certificate of title that did not reflect Americredit's security interest in the vehicle.

Strong later transferred the vehicle to an automobile dealer owner, and the vehicle thereafter passed through a nondealer owner and additional dealer owners before Metzger purchased it in March

---

[1] Metzger also argues that she was a bona fide purchaser for value under OCGA §§ 23-1-19 and 11-2-403. Because we resolve this case in Metzger's favor based on OCGA § 11-9-337 (1), we do not address her alternative statutory arguments.

2002. None of the subsequent Georgia certificates of title issued for the vehicle in connection with these transfers reflected Americredit's security interest.

After Metzger purchased the vehicle and registered it with the DMV, Americredit, having finally located the vehicle, repossessed it from Metzger's residence and sold it at auction. Once she learned from the police department that her vehicle had been repossessed rather than stolen, Metzger filed suit against Americredit in the Superior Court of Clayton County. She contended that Americredit wrongfully repossessed her vehicle and kept her personal belongings contained therein, and, as a consequence, should be held liable for conversion, negligence, deceptive trade practices, breach of the peace, breach of good faith, racketeering, unjust enrichment, and breach of sale.

Metzger subsequently filed a motion seeking partial summary judgment on her claim of conversion. Americredit filed its response and a cross-motion for summary judgment on all of Metzger's claims. The superior court denied Metzger's motion for partial summary judgment and granted summary judgment in favor of Americredit on Metzger's conversion claim only. The superior court concluded that Americredit had a perfected security interest in the vehicle that it could enforce against Metzger. Metzger now appeals from that order.

"When reviewing the grant or denial of a motion for summary judgment, this Court conducts a de novo review of the law and the evidence." (Citation omitted.) *Osman v. Olde Plantation Apts. on Montreal*, 270 Ga. App. 627 (607 SE2d 236) (2004). In order to establish a claim for conversion, "the complaining party must show (1) title to the property or the right of possession, (2) actual possession in the other party, (3) demand for return of the property, and (4) refusal by the other party to return the property." (Citation omitted.) *Johnson v. First Union Nat. Bank*, 255 Ga. App. 819, 823 (4) (567 SE2d 44) (2002). The sole issue regarding Metzger's conversion claim is whether Metzger had the exclusive right of possession to the vehicle, making Americredit's seizure unlawful, or whether Americredit's security interest instead empowered it to practice self-help and repossess the vehicle from Metzger. See, e.g., *Fulton v. Anchor Sav. Bank*, 215 Ga. App. 456, 468 (5) (452 SE2d 208) (1994). Because the material facts are undisputed, resolution of this issue turns on our interpretation of the applicable statutory framework.

"[I]n construing [Georgia statutes], we apply the fundamental rules of statutory construction that require us to construe a statute according to its terms, to give words their plain and ordinary meaning, and to avoid a construction that makes some language mere surplusage." (Citation omitted.) *Slakman v. Continental Cas. Co.*, 277 Ga. 189, 191 (587 SE2d 24) (2003). See also *City of Atlanta v.*

*Yusen Air & Sea Svc. Holdings,* 263 Ga. App. 82, 84 (1) (587 SE2d 230) (2003). With these rules in mind, we turn to the Motor Vehicle Certificate of Title Act, OCGA § 40-3-1 et seq. (the "Act"), which provides the exclusive procedure for perfecting a security interest in a motor vehicle in Georgia. *Staley v. Phelan Finance Corp.,* 116 Ga. App. 1, 1-2 (156 SE2d 201) (1967).

Under the Act, a security interest in a motor vehicle is perfected, at the latest, on the date when the application documents for obtaining a certificate of title are delivered to the DMV or local tag agent, so long as the application documents properly reflect the existence of the security interest:

> (b) (1) A security interest is perfected by delivery to the commissioner or to the county tag agent of the county in which the seller is located, of the county in which the sale takes place, of the county in which the vehicle is delivered, or of the county wherein the vehicle owner resides, of the required fee and:
> (A) The existing certificate of title, if any, and an application for a certificate of title containing the name and address of the holder of a security interest; or
> (B) A notice of security interest on forms prescribed by the commissioner.

OCGA § 40-3-50. Perfection occurs on that date, irrespective of whether the certificate of title subsequently issued by the DMV fails to reflect the security interest:

> (b) (2) The security interest is perfected as of the time of its creation if the initial delivery of the application or notice to the commissioner or local tag agent is completed within 20 days thereafter, regardless of any subsequent rejection of the application or notice for errors; otherwise, as of the date of the delivery to the commissioner or local tag agent. The local tag agent shall issue a receipt or other evidence of the date of filing of such application or notice. When the security interest is perfected as provided for in this subsection, it shall constitute notice to everybody of the security interest of the holder.

Id. "Compliance with the filing requirements of the Act has the effect of imputing constructive notice to all who may subsequently acquire an interest in or lien against the property." (Citation and punctuation omitted.) *Cobb Center Pawn &c. v. Gordon,* 242 Ga. App. 73, 75 (2) (529 SE2d 138) (2000).

Based on this statutory language and case law, it might appear that because Strong delivered proper application forms reflecting Americredit's security interest to the Cobb County tag agent, Americredit could enforce its security interest against Metzger, who under OCGA § 40-3-50 (b) (2) would have constructive notice of the security interest despite the clerical error contained in the Georgia certificate of title that was later issued. However, OCGA § 40-3-50 contains three statutory exceptions:

> (a) *Except as provided in Code Sections 11-9-303, 11-9-316, and 11-9-337,* the security interest in a vehicle of the type for which a certificate of title is required shall be perfected and shall be valid against subsequent creditors of the owner, subsequent transferees, and the holders of security interests and liens on the vehicle by compliance with this chapter.

(Emphasis supplied.)

Significantly, one of those exceptions, OCGA § 11-9-337, states:

> If, *while a security interest in goods is perfected by any method under the law of another jurisdiction,* this state issues a certificate of title that does not show that the goods are subject to the security interest or contain a statement that they may be subject to security interests not shown on the certificate:
> (1) *A buyer of the goods, other than a person in the business of selling goods of that kind, takes free of the security interest if the buyer gives value and receives delivery of the goods after issuance of the certificate and without knowledge of the security interest.*

(Emphasis supplied.)[2] An explanation of this provision is set forth in Comment 2 to Uniform Commercial Code § 9-337:

---

[2] OCGA § 11-9-337 was enacted by the Georgia legislature as part of the revisions to Article 9 of the Uniform Commercial Code made in 2001. See Ga. L. 2001, p. 362, § 1. See also id. at § 32 (substituting "Sections 11-9-303, 11-9-316, and 11-9-337" for "Section 11-9-103, relating to accounts, contract rights, general intangibles, and equipment governed by the laws of another jurisdiction, and incoming goods already subject to a security interest" in subsection (a) of OCGA § 40-3-50). Because the priority of claims as between Americredit and Metzger could not have been established until after Metzger purchased the vehicle in March 2002, the 2001 version of Article 9 applies in this case to determine priority rather than earlier versions. See OCGA § 11-9-709 (a).

This section affords protection to certain good-faith purchasers for value who are likely to have relied on a "clean" certificate of title, i.e., one that neither shows that the goods are subject to a particular security interest nor contains a statement that they may be subject to security interests not shown on the certificate. Under this section, a buyer can take free of, and the holder of a conflicting security interest can acquire priority over, a security interest that is perfected by any method under the law of another jurisdiction.

UCC § 9-337 cmt. 2.[3]

In the present case, the undisputed evidence of record shows that the six requirements of the statutory exception contained in OCGA § 11-9-337 (1) have been met. First, the parties agree that, at the time that Strong filed his application for a Georgia certificate of title with the Cobb County tag agent, Americredit had previously perfected its security interest in the vehicle under New York law, and the security interest remained perfected. Second, the certificate of title issued by the DMV to Strong failed to show that the vehicle was subject to a security interest. Third, Metzger is not a person in the business of selling automobiles. Fourth, Metzger gave value for the vehicle. Fifth, Metzger received delivery of the vehicle after issuance of the Georgia certificate of title by the DMV erroneously omitting reference to Americredit's security interest. Sixth, and finally, Metzger was without knowledge of the security interest that Americredit held in the vehicle. Thus, Metzger was entitled to invoke OCGA § 11-9-337 (1). It necessarily follows that Metzger took the vehicle free of Americredit's security interest.

However, Americredit contends that two additional statutes found in Georgia's Uniform Commercial Code, OCGA §§ 11-9-303 and 11-9-316, indicate that Metzger took the vehicle subject to the security interest. Based on these two statutes, Americredit argues that the special good faith purchaser rule set forth in OCGA § 11-9-337 (1) has no application in this case, because its perfected security interest in Metzger's vehicle was no longer governed by New York law once the proper application documents and required fee for a Georgia certificate of title were submitted to the Georgia DMV by James Strong. Thus, in Americredit's view, OCGA § 11-9-337 (1) does not apply

---

[3] In order to determine the meaning and purpose behind the enactment of a Georgia Commercial Code provision that is taken verbatim from the UCC, we turn to the UCC Official Comments for assistance. *Gerber & Gerber, P.C. v. Regions Bank*, 266 Ga. App. 8, 11 (2), n. 1 (596 SE2d 174) (2004).

under the circumstances here because the erroneous Georgia certificate of title was not issued *"while"* its security interest in the vehicle was perfected "under the law of another jurisdiction."

Americredit's statutory argument is based on a strained reading of the interplay between OCGA §§ 11-9-303, 11-9-316 (d) and (e), and 11-9-337. OCGA § 11-9-303, entitled "Law governing perfection and priority of security interests in goods covered by a certificate of title," is a choice of law provision, as its title suggests. OCGA § 11-9-303 (b) provides that:

> Goods become covered by a certificate of title when a valid application for the certificate of title and the applicable fee are delivered to the appropriate authority. Goods cease to be covered by a certificate of title at the earlier of the time the certificate of title ceases to be effective under the law of the issuing jurisdiction or the time the goods become covered subsequently by a certificate of title issued by another jurisdiction.

OCGA § 11-9-303 (c) then provides that "[t]he local law of the jurisdiction under whose certificate of title the goods are covered governs perfection."[4] These provisions indicate that even when a security interest in goods has been perfected in another state, Georgia law determines perfection and priority issues once the goods become "covered" by a Georgia certificate of title, which occurs when a valid application and fee are submitted to the DMV.

Once it becomes clear that Georgia law governs because the goods are covered by a Georgia certificate of title, the next question is whether the security interest previously perfected in another state remains perfected. That issue is addressed by OCGA § 11-9-316,

---

[4] OCGA § 11-9-303 provides in full:

(a) *Applicability of Code section.* This Code section applies to goods covered by a certificate of title, even if there is no other relationship between the jurisdiction under whose certificate of title the goods are covered and the goods or the debtor.

(b) *When goods covered by certificate of title.* Goods become covered by a certificate of title when a valid application for the certificate of title and the applicable fee are delivered to the appropriate authority. Goods cease to be covered by a certificate of title at the earlier of the time the certificate of title ceases to be effective under the law of the issuing jurisdiction or the time the goods become covered subsequently by a certificate of title issued by another jurisdiction.

(c) *Applicable law.* The local law of the jurisdiction under whose certificate of title the goods are covered governs perfection, the effect of perfection or nonperfection, and the priority of a security interest in goods covered by a certificate of title from the time the goods become covered by the certificate of title until the goods cease to be covered by the certificate of title.

entitled "Continued perfection of security interest following change in governing law," specifically subsections (d) and (e), which deal with certificates of title.[5] These subsections set forth the general rules for when a security interest perfected in another state remains perfected in Georgia, once the goods are "covered" by a Georgia certificate of title.

"A statute must be construed in relation to other statutes of which it is a part, and all statutes relating to the same subject-matter, briefly called statutes in pari materia, are construed together, and harmonized wherever possible, so as to ascertain the legislative intendment and give effect thereto." (Punctuation omitted.) *City of Buchanan v. Pope*, 222 Ga. App. 716, 717 (1) (476 SE2d 53) (1996). When read in pari materia with OCGA §§ 11-9-303 and 11-9-316 (d) and (e), OCGA § 11-9-337 (1) gives protection to a good faith purchaser for value who is not "in the business of selling goods of that kind," when there is continued perfection of the security interest under OCGA § 11-9-316 (d) and (e), but the Georgia certificate of title fails to reflect the security interest. Consequently, in the present case, although Americredit's security interest in the vehicle remained perfected at the time that Metzger purchased the vehicle, that security interest could not be enforced as against Metzger, a good faith purchaser as that term is defined in OCGA § 11-9-337 (1), since the security interest was not properly reflected on the Georgia certificate of title.

Furthermore, "a specific statute will prevail over a general statute, absent any indication of a contrary legislative intent, to resolve any inconsistency between them." (Citation, punctuation and emphasis omitted.) *Hooks v. Cobb Center Pawn &c.*, 241 Ga. App. 305, 309 (6) (527 SE2d 566) (1999). OCGA § 11-9-316 (d) and (e) are general statutory provisions addressing continued perfection of an

---

[5] OCGA § 11-9-316 (d) and (e) provide:

(d) *Goods covered by certificate of title from this state.* Except as otherwise provided in subsection (e) of this Code section, a security interest in goods covered by a certificate of title which is perfected by any method under the law of another jurisdiction when the goods become covered by a certificate of title from this state remains perfected until the security interest would have become unperfected under the law of the other jurisdiction had the goods not become so covered.

(e) *When subsection (d) of this Code section security interest becomes unperfected against purchasers.* A security interest described in subsection (d) of this Code section becomes unperfected as against a purchaser of the goods for value and is deemed never to have been perfected as against a purchaser of the goods for value if the applicable requirements for perfection under subsection (b) of Code Section 11-9-311 or Code Section 11-9-313 are not satisfied before the earlier of:

(1) The time the security interest would have become unperfected under the law of the other jurisdiction had the goods not become covered by a certificate of title from this state; or

(2) The expiration of four months after the goods had become so covered.

out-of-state security interest once goods become covered by a Georgia certificate of title. In contrast, OCGA § 11-9-337 (1) sets forth a more specific rule addressing what occurs in the unique circumstance where the Georgia certificate of title that covers the goods erroneously fails to reflect the security interest originally perfected in another state. Because OCGA § 11-9-337 (1) is the more specific statute, it controls, even if there were a perceived inconsistency between the various statutory provisions. Accordingly, Americredit's statutory interpretation argument is unavailing.

Finally, we conclude that the superior court erred by relying on OCGA § 40-3-31 (4)[6] and our decision in *Strother Ford, Inc. v. First Nat. Bank of Maryland*, 132 Ga. App. 268 (208 SE2d 25) (1974), instead of OCGA § 11-9-337 (1). OCGA § 40-3-31 by its terms only applies when a certificate of title has been "lost, stolen, mutilated, or destroyed or becomes illegible," and none of those circumstances occurred here. Furthermore, *Strother* is distinguishable from the instant action. The certificate of title at issue in that case failed to reflect a security interest on the vehicle due to fraud by the party that submitted the application to the DMV (see *Strother*, 132 Ga. App. at 268, 272 (2)), whereas here the certificate omitted the security interest information as a result of clerical error, not intentional wrongdoing. Moreover, at the time *Strother* was decided in 1974, Georgia statutory law did not yet contain an exception to its priority statutes akin to OCGA § 11-9-337 for security interests on automobiles perfected in another state but not reflected in a later issued Georgia certificate of title. See Ga. Code Ann. § 68-421a (Supp. 1974). Thus, the superior court improperly relied on OCGA § 40-3-31 (4) and *Strother* as a basis for its decision in this case.

For these reasons, we reverse the partial grant of summary judgment in favor of Americredit. We remand to the superior court to enter summary judgment in favor of Metzger on her conversion claim.

*Judgment reversed and case remanded with direction. Blackburn, P. J., and Miller, J., concur.*

---

[6] OCGA § 40-3-31, entitled "Lost, stolen, mutilated, or destroyed certificates," provides in part:

> If a certificate of title is *lost, stolen, mutilated, or destroyed or becomes illegible,* the owner or the legal representative of the owner named in the certificate, as shown by the records of the commissioner or the commissioner's duly authorized county tag agent, shall promptly make application for and may obtain a replacement, upon furnishing information satisfactory to the commissioner or authorized county tag agent. . . .
>
> (4) If two or more innocent persons are the victims of the fraud or mistake of another and none of the victims could have reasonably taken steps to detect or prevent the fraud or mistake, the victim who first acquired an interest in a vehicle through any certificate of title shall have such victim's interest protected.

(Emphasis supplied.)

Decided March 30, 2005 —
Reconsideration denied May 27, 2005 — 

*Herman, Taylor & Lee, Jerome Lee*, for appellant.
*Lefkoff & Rubin, Craig B. Lefkoff*, for appellee.