A11A0228. JENKINS v. WACHOVIA BANK,
NATIONAL ASSOCIATION.
(711 SE2d 80)

MIKELL, Judge.
Martha J. Jenkins sued Wachovia Bank, National Association ("Wachovia"),[1] asserting claims based on Wachovia's payment, over a forged endorsement, of a check made payable to Jenkins but never delivered to Jenkins or in her possession. The trial court granted summary judgment to Wachovia, and Jenkins appeals. Finding no error, we affirm.

> Summary judgment is proper when there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. OCGA § 9-11-56 (c). A de novo standard of review applies to an appeal from a grant of summary judgment, and we view the evidence, and all reasonable conclusions and inferences drawn from it, in the light most favorable to the nonmovant.[2]

So viewed, the record reflects the following undisputed facts. On July 26, 2007, Jenkins signed a promissory note, security deed, and other documents relating to a loan from First Horizon Home Loans, a division of First Tennessee Bank (the lender and associated entities hereinafter referred to collectively as "First Tennessee"). Jenkins alleges that she did not intend to obtain a loan from First Tennessee,

---

[14] *Butts*, 205 Ga. App. at 494 (2).

[1] Wachovia was incorrectly identified as "Wachovia Bank National Association" in Jenkins's complaint.

[2] (Citation omitted.) *Matjoulis v. Integon Gen. Ins. Corp.*, 226 Ga. App. 459 (1) (486 SE2d 684) (1997).

but that she was defrauded into signing these documents by her cousins, Courtney Brown ("Brown") and Gail Brown (Courtney's mother), and by the closing attorney, Brian D. Pierce.[3] The total loan was for $88,000. A check for loan proceeds in the amount of $69,000, dated July 31, 2007, was issued payable to "Martha Jeanette Jenkins," drawn on the "Brian Pierce, P. C., Trust Account" at Wachovia. It is undisputed that Jenkins never received this $69,000 check. Instead, Jenkins alleges that Brown forged Jenkins's signature on the back of the check and then endorsed it in his own name. Brown then set up two new accounts at Wachovia, deposited a total of $60,000 into those accounts, and obtained the remaining $9,000 in cash.

Jenkins filed the underlying action against Wachovia on March 5, 2009. Based on Wachovia's actions in failing to obtain Jenkins's signature on the check, cashing the check for Brown, opening two new accounts for Brown, depositing the funds in the new accounts, and giving Brown the balance of the funds from the check in cash, Jenkins asserted claims against Wachovia for conversion, theft by taking, fraud, intentional breach of private and legal duties owed to her, negligence, and intentional infliction of emotional distress. In the last amendment to her complaint, Jenkins asserted the following additional claims against Wachovia: (1) Wachovia was not a holder in due course; (2) Wachovia intentionally and negligently failed to follow its policies and procedures concerning verification of customer identification and endorsements; (3) Wachovia "intentionally, fraudulently, and negligently" cashed a "forged check" for Brown and failed to act in good faith or with reasonable commercial standards of fair dealing; and (4) Wachovia conspired with others to defraud Jenkins. Jenkins subsequently withdrew her claims for conversion and theft by taking. Jenkins moved for default judgment against Wachovia, and Wachovia moved for summary judgment. After a hearing, the trial court denied Jenkins's motion for default judgment and granted summary judgment in favor of Wachovia. It is from this order that Jenkins appeals.

1. Jenkins contends that the trial court erred in granting

---

[3] Jenkins alleges that she was informed by Pierce that the documents related to a codicil to her will and other matters. Alleging fraud in connection with this loan, Jenkins has filed separate actions against Gail and Courtney Brown, the lending entities, and Pierce and his professional corporation, in addition to the action underlying this appeal.

In her action against Pierce, the trial court granted summary judgment to defendants, based on Jenkins's admission that she did not read the documents before signing them. On appeal, this Court reversed, on the ground that genuine issues of material fact existed as to whether at the time the loan documents were signed, a confidential attorney-client relationship existed between Jenkins and Pierce, upon which Jenkins might have relied in not reading the documents. *Jenkins v. Pierce*, 304 Ga. App. 603, 604 (697 SE2d 286) (2010).

summary judgment as to her "claim" that Wachovia was not a "holder in due course."[4] However, whether Wachovia was a holder in due course of the check is irrelevant to the situation at bar. "Holder in due course" status gives the holder of an instrument (such as a check) the right to enforce it and to cut off certain defenses of the obligor under the instrument.[5] But here, Jenkins is not the "holder" of the check. To be a "holder" of a negotiable instrument requires possession of the instrument,[6] and it is undisputed that Jenkins never had possession of this check at any time. Further, Wachovia is not attempting to enforce the check against Jenkins. Thus, whether Wachovia is a "holder in due course" is irrelevant to her action. As the trial court correctly noted, "[h]older in due course status ... is not an affirmative claim which [Jenkins] may make against Wachovia for damages." Thus, it is irrelevant whether there was evidence of fraud on the face of the check, because such evidence goes only to determine if Wachovia was a holder in due course.[7]

Jenkins's reliance on *Hartsock v. Rich's Employees Credit Union*[8] is misplaced. In that case, the check in question was not delivered to the original payee but was instead intercepted, altered, and deposited by a thief into the thief's account at the depository bank.[9] The originally-named payee sued the depositor and the drawee banks.[10] This Court found that the defendant banks' motion for summary judgment was properly denied "on the issue of whether [the banks] are holders in due course of the check,"[11] because there was some evidence of forgery on the face of the check at issue.[12] However, the opinion in that case does not disclose what *claim* the payee was asserting, as to which the banks' "holder in due course" status might be relevant.[13] In the case at bar, whether Wachovia is or is not a holder in due course does not impact any claim asserted by Jenkins.

---

[4] The term "holder in due course" is defined at OCGA § 11-3-302.

[5] See OCGA § 11-3-305 (b) and official comment 2 thereunder; "Proof of Fraud in the Making of Commercial Paper and the Resulting Consequences," by Thomas M. Geisler, Jr., 93 Am. Jur. Proof of Facts 3d 141 § 11 (except for certain "real defenses," defenses that an obligor might raise *against* a holder of an instrument are cut off where the holder is one "in due course").

[6] See OCGA § 11-1-201 (20).

[7] See *Southtrust Bank of Ga. v. Parker*, 226 Ga. App. 292, 293-295 (1) (486 SE2d 402) (1997) (bank, a holder in due course, sued maker of note, who raised defense of forgery of her signature; summary judgment for maker was reversed where fact issues remained as to whether maker ratified note).

[8] 279 Ga. App. 724 (632 SE2d 476) (2006).

[9] Id.

[10] Id.

[11] Id. at 726 (3).

[12] Id.

[13] Id.

2. In Jenkins's second, third, and fourth enumerations of error, she asserts that the trial court erred in granting summary judgment to Wachovia as to her claims based on (1) Wachovia's intentional and negligent failure to follow its policies concerning verification of endorsements on checks; (2) Wachovia's breach of a private duty and legal duty to Jenkins; and (3) Wachovia's negligent and intentional act of cashing a forged check, failure to act in good faith, and failure to observe reasonable commercial standards. We discern no error.

It is undisputed that the check was never delivered to Jenkins and she never had possession of it. For that reason, Jenkins has no rights under this particular check. OCGA § 11-3-420 provides that "[a]n action for conversion of an instrument may not be brought by . . . a payee or indorsee *who did not receive delivery of the instrument either directly or through delivery to an agent or a co-payee*."[14] No conversion action lies because a payee who never had possession of the check has no interest in the check and cannot enforce it. As noted in the Uniform Commercial Code (UCC) official comments[15] accompanying OCGA § 11-3-420, "[u]ntil delivery, the payee does not have any interest in the check. The payee never became the holder of the check nor a person entitled to enforce the check."[16]

The fact that Jenkins withdrew her claim for conversion does not make her other tort claims valid. As the official comments explain, one in Jenkins's position (that is, payee of a check which was never delivered to her) is not injured by the forged endorsement of the check:

> Normally the drawer of a check intends to pay an obligation owed to the payee. But if the check is never delivered to the payee, the obligation owed to the payee is not affected. If the check falls into the hands of a thief who obtains payment after forging the signature of the payee as an indorsement, the obligation owed to the payee continues to exist after the thief receives payment. Since the payee's right to enforce the underlying obligation is unaffected by the fraud of the thief, there is no reason to give any additional remedy to the payee.[17]

---

[14] (Emphasis supplied.) OCGA § 11-3-420 (a) (ii). Accord *Hartsock*, supra at 724 (1).

[15] "To determine the legislature's intent in enacting a provision of the UCC, we consult the official comments accompanying the UCC." (Citations and punctuation omitted.) *Gerber & Gerber, P.C. v. Regions Bank*, 266 Ga. App. 8, 11 (2), n. 1 (596 SE2d 174) (2004). Accord *Hartsock*, supra at 724-725 (1).

[16] OCGA § 11-3-420, Official Comment 1.

[17] Id.

The comment makes it clear that a payee who does not take delivery of an instrument does not have any ownership interest in the check. Further, Jenkins does not have standing to enforce the check under OCGA § 11-3-301,[18] which is also grounded on present or past possession of the check, with limited exceptions not applicable in the case at bar.[19]

Because Jenkins has no ownership interest in the check and has no standing to enforce it, her claims based on tort fall to the ground. The actions by Wachovia of which Jenkins complains — paying the check over a forged endorsement, failing to obtain Jenkins's endorsement of the check, opening bank accounts for Brown, depositing the funds in the new accounts, giving Brown the balance of the funds from the check in cash, failure to act in good faith, and failure to observe reasonable commercial standards — were not violations of any legal right of, or duty owed to, Jenkins, and she has suffered no damages from these actions. Thus, they do not give rise to a tort claim under the statutes she cites, OCGA §§ 51-1-1,[20] 51-1-6,[21] and 51-1-8.[22] And Jenkins's reliance on OCGA § 11-3-501 is also misplaced. This statute merely defines "presentment" of an instrument for purposes of determining when or if an instrument is dishonored;[23] it does not support a cause of action by one never in possession of the instrument against the depositor or drawee bank.

Jenkins's claim to recover $69,000 from Wachovia is contradicted by her adamant insistence that she did not intend to take out

---

[18] Under OCGA § 11-3-301, a

"[p]erson entitled to enforce" an instrument means (i) the holder of the instrument; (ii) a nonholder in possession of the instrument who has the rights of a holder; or (iii) a person not in possession of the instrument who is entitled to enforce the instrument pursuant to Code Section 11-3-309 [dealing with lost or stolen instruments] or subsection (d) of Code Section 11-3-418 [dealing with payment of an instrument by mistake]. A person may be a person entitled to enforce the instrument even though the person is not the owner of the instrument or is in wrongful possession of the instrument.

[19] See id. at subsection (iii). See also id., official comment.

[20] OCGA § 51-1-1 ("A tort is the unlawful violation of a private legal right other than a mere breach of contract, express or implied. A tort may also be the violation of a public duty if, as a result of the violation, some special damage accrues to the individual").

[21] OCGA § 51-1-6 ("When the law requires a person to perform an act for the benefit of another or to refrain from doing an act which may injure another, although no cause of action is given in express terms, the injured party may recover for the breach of such legal duty if he suffers damage thereby").

[22] OCGA § 51-1-8 ("Private duties may arise from statute or from relations created by contract, express or implied. The violation of a private duty, accompanied by damage, shall give a right of action").

[23] See 5 Ga. Jur. Uniform Commercial Code § 4:153 ("For Article 3 purposes, essentially, an instrument is dishonored when a necessary or optional presentment is duly made and due acceptance or payment is refused and cannot be obtained within the prescribed time") (footnote omitted).

a loan. In seeking to recover the check proceeds from Wachovia, she is in essence making a claim for the loan proceeds. If she wants to ratify the loan, however, as discussed above, she can make a claim against the closing attorney for the loan proceeds.

3. Jenkins asserts that the trial court erred in granting summary judgment to Wachovia on Jenkins's claim for conspiracy to defraud. This enumeration of error fails. As set forth in Division 2 above, Jenkins has no tort claim against Wachovia based on Wachovia's action in paying the $69,000 check over a forged endorsement. Because the tort claim fails, so also the conspiracy claim fails:

> A conspiracy is a combination of two or more persons to accomplish an unlawful end or to accomplish a lawful end by unlawful means. To recover damages for a civil conspiracy claim, a plaintiff must show that two or more persons, acting in concert, engaged in conduct that constitutes a tort. Absent the underlying tort, there can be no liability for civil conspiracy.[24]

4. Jenkins argues that the trial court erred in granting Wachovia summary judgment on her claim for intentional infliction of emotional distress. We find no error.

In order to prevail on such a claim, Jenkins must show, inter alia,[25] that the behavior of Wachovia's employees was "extreme and outrageous."[26] Further, "[w]hether the alleged conduct is sufficiently extreme or outrageous is a question of law for the trial court."[27]

Jenkins bases her claim on the following actions taken by Wachovia's employees: intentionally cashing a check over a forged endorsement, in violation of Wachovia's internal policies; depositing some of the funds into two new accounts established by Brown, and giving Brown the balance in cash; communicating with Brown and Pierce with regard to the check; and intentionally or recklessly causing Jenkins severe emotional distress. Even accepting Jenkins's characterization of Wachovia's actions, none of these actions rise to the level of "intentional infliction of emotional distress." As this Court has explained, in determining "[w]hether a claim rises to the

---

[24] *Hartsock*, supra at 725-726 (2), citing *Premier/Ga. Mgmt. Co. v. Realty Mgmt. Corp.*, 272 Ga. App. 780, 788 (3) (c) (613 SE2d 112) (2005).

[25] See *Bridges v. Winn-Dixie Atlanta*, 176 Ga. App. 227, 230 (1) (335 SE2d 445) (1985) (listing four elements of claim for intentional infliction of emotional distress).

[26] (Citation omitted.) *Wilcher v. Confederate Packaging*, 287 Ga. App. 451, 453 (2) (651 SE2d 790) (2007).

[27] (Footnote omitted.) *Ashman v. Marshall's of MA*, 244 Ga. App. 228, 229 (1) (535 SE2d 265) (2000). Accord *Kirkland v. Earth Fare, Inc.*, 289 Ga. App. 819, 823 (4) (658 SE2d 433) (2008) (whole court).

requisite level of outrageousness and egregiousness to sustain a claim for intentional infliction of emotional distress,"[28]

> it has not been enough that the defendant has acted with an intent which is tortious or even criminal, or that he has intended to inflict emotional distress, or even that his conduct has been characterized by malice, or a degree of aggravation that would entitle the plaintiff to punitive damages for another tort. Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.[29]

As the evidence in this case clearly fails to meet this standard, the trial court did not err in granting summary judgment to Wachovia on this issue.

5. Jenkins contends that the trial court erred in denying her motion for default judgment against Wachovia. We disagree.

Jenkins's complaint was filed on March 5, 2009, and Wachovia was served with process on March 11, 2009. On April 7, 2009, before Wachovia's answer was due, Jenkins's counsel agreed to an extension of time for Wachovia to file its answer, and on or about April 14, 2009, the parties signed a stipulation extending the time for Wachovia's response pleadings to May 10, 2009. As May 10, 2009, was a Sunday, Wachovia filed its answer and the stipulation extending time on May 11, 2009.

Despite the signed stipulation between the parties, Jenkins filed a motion for default judgment against Wachovia on May 7, 2009, contending that Wachovia was in default despite the agreement to extend time, because Wachovia failed to file the stipulation extending time until after the original period for filing its answer had expired.[30] The trial court denied Jenkins's motion for default judgment.

A trial court's denial of a motion for an entry of default judgment is reviewed on appeal for abuse of discretion.[31] In the case at bar, Jenkins agreed to the extension of time, and she has not shown that Wachovia's failure to file the stipulation extending time within the original period for filing its answer resulted in any prejudice to her.

---

[28] (Citation omitted.) *Northside Hosp. v. Ruotanen*, 246 Ga. App. 433, 435 (541 SE2d 66) (2000).

[29] Id., citing *Phinazee v. Interstate Nationalease*, 237 Ga. App. 39-40 (514 SE2d 843) (1999). Accord *Wilcher*, supra at 454 (2).

[30] See OCGA § 9-11-6 (b).

[31] *Edenfield & Cox, P.C. v. Mack*, 282 Ga. App. 816 (640 SE2d 343) (2006).

Even though "[a] private agreement between counsel extending time to file pleadings is not binding except when in compliance with [OCGA § 9-11-6 (b)] and it is filed with the court,"[32] the trial court acted within its discretion to deny default judgment in this case.

*Judgment affirmed. Smith, P. J., and Dillard, J., concur.*

DECIDED MAY 13, 2011.

*Simmons & Simmons, Annie R. Simmons*, for appellant.
*Nelson, Mullins, Riley & Scarborough, Richard B. Herzog, Jr., Kinan Obeidin*, for appellee.

---

[32] (Citation and punctuation omitted.) *Roberson v. Gnann*, 235 Ga. App. 112, 114 (2) (508 SE2d 480) (1998).