**OWNBEY ENTERPRISES, INC., Plaintiff,**

v.

**WACHOVIA BANK, N.A., and Bank Of America, N.A., Defendants.**

No. CIV.A. 4:05–CV–0025–.

United States District Court,
N.D. Georgia,
Rome Division.

April 17, 2006.

---

Robert Michael Withrock, Avrett & Withrock, Dalton, GA, for Plaintiff.

M. David Merritt, McLain & Merritt, Cary Ichter, Thompson Hine LLP, David Gregory Michell, Balch & Bingham, Atlanta, GA, for Defendant.

## ORDER

HAROLD L. MURPHY, District Judge.

This is a civil action alleging negligence, conversion, breach of the duty of good faith and fair dealing, and asserting claims under O.C.G.A. §§ 11–3–306 and 11–4–401. Plaintiff demands a judgment against Defendants for $292,126.19, prejudgment interest on that sum, and attorney's fees and expenses. This case is before the Court on Defendant Wachovia Bank, N.A.'s Motion for Summary Judgment [90] and Motion for Oral Argument [91], and on Defendant Bank of America, N.A.'s Motion for Summary Judgment [92] and Motion for Oral Argument [96].

### I. Background

#### A. Factual Background

Keeping in mind that when deciding a motion for summary judgment, the Court must view the evidence and all factual inferences in the light most favorable to the party opposing the motion, the Court

provides the following statement of facts. *Harris v. Coweta County, Ga.,* No: 03–15094, 2005 WL 3501588, at *1 (11th Cir. Dec.23, 2005). This statement does not represent actual findings of fact. *Jones v. Am. Gen. Life Ins. Co.,* 370 F.3d 1065, 1069 n. 1 (11th Cir.2004) (citing *Wooden v. Bd. of Regents of Univ. Sys. of Ga.,* 247 F.3d 1262, 1271 n. 9 (11th Cir.2001)). Rather, it is intended simply to place the Court's legal analysis within the context of a specific case or controversy. *Swint v. City of Wadley,* 51 F.3d 988, 992 (11th Cir.1995) ("[W]hat we state as 'facts' in this [order] for purposes of reviewing the ruling[ ] on the summary judgment motion[ ] may not be the actual facts. They are, however, the facts for present purposes, and we set them out below.").

## 1. The Parties

Plaintiff Ownbey Enterprises, Inc. is a wholesale gasoline marketing company located in Dalton, Georgia. (Def. Bank of America Statement Material Facts ("DBOASMF") ¶ 1; Pl.'s Resp. DBOASMF ("PBOASMF") ¶ 1; Dep. of Rodney Ownbey at 5.)

Defendant Wachovia Bank, N.A. ("Wachovia") is a banking concern with offices and a place of business in Whitfield County, Georgia. (Am.Compl.¶ 1.)

Defendant Bank of America, N.A. ("Defendant Bank of America") is a banking concern with offices and a place of business in Whitfield County, Georgia. (Am. Compl.¶ 2.)

## 2. Material Facts

### a. Plaintiff's Account

During the time period relevant to this action, Plaintiff maintained commercial checking account number 12–852–338 ("Plaintiff's Account") with Defendant Wachovia from the 1990s to 2003. (Def. Wachovia Statement Material Facts ("DWSMF") ¶ 1; Pl.'s Resp. DWSMF ("PWSMF") ¶ 1; Ownbey Dep. at 23, 29, 62.)

Plaintiff received its monthly bank statements from Defendant Wachovia in the first or second week of each month during the time period at issue. (DWSMF ¶ 5; PWSMF ¶ 5; Ownbey Dep. at 29–30; Am. Compl. ¶ 9.) Until August 2000, Plaintiff received copies of its cancelled checks with its monthly bank statement; but, after notice to Plaintiff in May 2000, Defendant Wachovia began returning reduced copies of the front of Plaintiff's cancelled checks with Plaintiff's Account statements. (DWSMF ¶ 6; PWSMF ¶ 6; Dep. of Ray Gatland at 8–9.) For example, Plaintiff received a fifty-eight page November 1, 2001, statement of account from Defendant Wachovia. (Aff. of J. Rodney Ownbey at 11.) The statement included Plaintiff's daily account activity and balance, deposits, other credits, checks, and reduced copies of the front of checks written on Plaintiff's Account. (*Id.* Ex. A.) The check portion of the statement included the check number, amount, and date of payment for each check. (*Id.*) Plaintiff never protested to, complained to, or requested that Defendant Wachovia again return Plaintiff's cancelled checks with its statements. (DWSMF ¶ 7; PWSMF ¶ 7; Ownbey Dep. at 88.)

J. Rodney Ownbey, President of Plaintiff, and Donna Lange, a staff accountant, were authorized to sign checks drawn on Plaintiff's Account. (DWSMF ¶ 2; PWSMF ¶ 2; Ownbey Dep. at 28.) Plaintiff's checks were maintained unsecured in Ms. Kim Hix's office in Plaintiff's accounting department, and were freely available to any of Plaintiff's employees. (DBOASMF ¶ 25; PBOASMF ¶ 25.) At the close of each business day, there were times when the checks were locked away and times when they may not have been locked away. (DBOASMF ¶ 25;

PBOASMF ¶ 25.) Plaintiff never maintained any account with Defendant Bank of America. (DBOASMF ¶ 3; PBOASMF ¶ 3; Ownbey Dep. at 92.)

### b. Ms. Henry's Embezzlement

From June 11, 2001 until September 24, 2002, Plaintiff employed Linda Henry as its chief financial officer. (DBOASMF ¶ 4; PBOASMF ¶ 4; DWSMF ¶ 3; PWSMF ¶ 3; Ownbey Dep. at 10–12, 108.) Ms. Henry was responsible for tracking Plaintiff's financial matters, but she was not authorized to sign checks on Plaintiff's Account. (DWSMF ¶ 3; PWSMF ¶ 3; Ownbey Dep. 10–12, 19, 38.)

From November 2001 until September 2002, Ms. Henry embezzled $292,126.19 from Plaintiff. (DBOASMF ¶ 5; PBOASMF ¶ 5; Am. Compl. ¶ 12.) Ms. Henry made herself the payee on a series of twenty-seven checks on Plaintiff's Account, forged the signature of one of Plaintiff's authorized signatories on the front of those checks, endorsed the checks, and deposited them into her personal account with Defendant Bank of America. (DBOASMF ¶ 5; PBOASMF ¶ 5; DWSMF ¶ 4; PWSMF ¶ 4; Ownbey Dep. at 32–33, 38, 97–98.)

Plaintiff's monthly account statements, as returned by Defendant Wachovia, included reduced images of the front of checks written on Plaintiff's Account. (Ownbey Aff. Ex. A.) For example, Plaintiff's November 1, 2001, statement included images of at least two checks forged by Ms. Henry. (*Id.*) Ms. Henry's name is typed and legible in the payee portion of checks 3155 and 3156. (*Id.*) Page four of Plaintiff's November 1, 2001, account statement also shows that checks 3155 and 3156 were drawn on November 16 and 23, 2001, respectively, for $6,068.39 each. (*Id.*) Ms. Lange's job was to receive, review, and reconcile Plaintiff's monthly account statements. (DWSMF ¶ 8;

PWSMF ¶ 8; Ownbey Dep. 42, 47.) Ms. Henry concealed her embezzlement scheme from Plaintiff by intercepting those monthly statements and the accompanying copies of Plaintiff's checks, changing the payee on the imaged check copies from herself to one of Plaintiff's legitimate vendors, placing the altered copies back into Defendant Wachovia's envelopes, and giving the opened envelopes to Ms. Lange to review and reconcile. (DBOASMF ¶ 6; PBOASMF ¶ 6; DWSMF ¶ 8; PWSMF ¶ 8; Ownbey Dep. at 42, 47, 97–98.)

The check images did not include the reverse side of the check to enable Plaintiff to verify that the checks were properly endorsed. (PBOASMF ¶ 6; Aff. of Rodney Ownbey ¶ 8.) Also, Plaintiff alleges that the reduced copies of the front of the cancelled checks were extremely difficult to read and that the checks were reduced to the point that the forged signatures were hard to distinguish from the authentic signatures of Ms. Lange and Mr. Ownbey. (PWSMF ¶ 6; PBOASMF ¶ 6.)

Mr. Ownbey discovered Ms. Henry's forgeries when he requested that Defendant Wachovia fax Plaintiff a copy of the front and back of a $10,000 check that was missing from Plaintiff's own records. (Ownbey Dep. at 43–51.) The full-size copy of the $10,000 check was made out to Ms. Henry and was purportedly signed by Ms. Lange. (*Id.* at 51.) Mr. Ownbey immediately became concerned and showed Ms. Lange the faxed copy of the full-size check. (*Id.*) Ms. Lange stated that her signature was forged. (*Id.*) Mr. Ownbey and Plaintiff's staff began an investigation searching for more forged checks, and ultimately found twenty-seven such forgeries by Ms. Henry. (*Id.*) Plaintiff did not discover Ms. Henry's embezzlement scheme until ten months had passed and Ms. Henry had stolen over $290,000 of Plaintiff's funds. (DBOASMF

¶ 7; PBOASMF ¶ 7; Ownbey Dep. at 112, 144.)

### c. Defendants

Defendant Bank of America had no actual notice of Ms. Henry's embezzlement scheme. (DBOASMF ¶ 8; PBOASMF ¶ 8.) Further, there is no evidence that Defendant Bank of America knew the checks at issue were forgeries at the time the checks were accepted. (PBOASMF ¶ 16.) The checks that Ms. Henry deposited with Defendant Bank of America did not contain any obvious alterations or any other obvious indication of forgery. (DBOASMF ¶ 9; PBOASMF ¶ 9; Aff. of Nancy A. Pupello ¶ 4.) Those checks were made payable to and were properly endorsed by Ms. Henry, a customer of Defendant Bank of America. (DBOASMF ¶ 9; PBOASMF ¶ 9.) The signatures of Plaintiff's authorized representatives on the face of those checks appeared to be valid and did not subjectively appear to be in the same handwriting as Ms. Henry's endorsements. (DBOASMF ¶ 9; PBOASMF ¶ 9.)

Defendant Bank of America's tellers are not required to make any special inquiry of a depositor when presented with a check for an unusually large sum of money, as to the source of such funds, because such funds could have come from any number of legitimate sources. (DBOASMF ¶ 11; PBOASMF ¶ 11.) During the events at issue, however, Defendant Bank of America had policies and procedures in place to detect suspicious or fraudulent activities. (DBOASMF ¶ 19; PBOASMF ¶ 19.) Defendant Bank of America uses a multi-tiered deposit account fraud detection system, known as "DARTS", which is designed to look for out-of-pattern deposit activity that may be fraudulent. (DBOASMF ¶ 20; PBOASMF ¶ 20; Dep. of Donna Cole at 26.) Although Defendant Bank of America applied its DARTS filtering system to Ms. Henry's checks, just as it does for all of the checks it processes, DARTS did not identify Ms. Henry's forged checks. (DBOASMF ¶ 21; PBOASMF ¶ 21; Cole Dep. at 50.) Defendant Bank of America's representative responsible for managing DARTS does not know why the system did not identify Ms. Henry's deposit activity, except to explain that the checks at issue did not meet the DARTS criteria that Defendant Bank of America had in place at that particular time. (DBOASMF ¶ 21; PBOASMF ¶ 21; Cole Dep. at 50.)

Defendant Wachovia did not verify the signatures on the forged checks or have a person review any of those checks to determine if the checks were forged. (PWSMF at 3; Dep. of Carnella Banks at 23, 30–31.) Plaintiff notified Defendant Wachovia of the forged checks on September 24, 2002, some nine months after Plaintiff received copies of the images of the first forged checks. (DWSMF ¶ 10; PWSMF ¶ 10.) Plaintiff, however, failed to report its unauthorized signatures on the face of Ms. Henry's checks to Defendant Bank of America within sixty days of receiving copies of those checks. (DBOASMF ¶ 23; PBOASMF ¶ 23; Ownbey Dep. at 140.) Plaintiff did not notify Defendant Bank of America that Ms. Henry's checks contained unauthorized signatures until Plaintiff filed this lawsuit on December 8, 2004. (DBOASMF ¶ 24; PBOASMF ¶ 24; Notice of Removal ¶ 2.)

### B. Procedural Background

On December 8, 2004, Plaintiff filed this lawsuit in the Superior Court of Whitfield County, Georgia, and on January 27, 2005, Defendants removed the case to this Court. Plaintiff initially asserted the following causes of action: (1) common law negligence against both Defendants; (2) conversion against both Defendants; (3) failure to act reasonably or to meet rea-

sonable commercial standards of dealing against Defendant Wachovia; (4) failure to act reasonably or to meet reasonable commercial standards of dealing against Defendant Bank of America; and (5) breach of the duty of good faith and fair dealing against both Defendants. (Compl.¶¶ 4–22.)

On February 4, 2005, Defendant Bank of America filed a Motion to Dismiss, and, on May 25, 2005, the Court granted that Motion, and dismissed without prejudice the above claims against Defendant Bank of America. (Order of May 25, 2005.)

On April 15, 2005, Plaintiff filed its Motion to Amend Complaint, and, on June 10, 2005, the Court entered an Order granting in part and denying in part that Motion. (Order of June 10, 2005.) The Court permitted Plaintiff to assert claims against Defendant Bank of America under O.C.G.A. §§ 11–3–306, 11–3–403, and 11–3–406, and to assert a claim against Defendant Wachovia under O.C.G.A. § 11–4–401. (Order of June 10, 2005.)

On June 17, 2005, Plaintiff filed its Amended Complaint and "withdr[ew] from consideration its reliance on O.C.G.A. § 11–3–403 on the grounds that said code section does not appear applicable to the facts and circumstances of this case." (Am.Compl.¶ 4.) On July 8, 2005, Defendant Bank of America filed a Motion to Dismiss Plaintiff's Amended Complaint, and, on August 16, 2005, the Court entered an Order granting in part and denying in part that Motion. (Order of Aug. 16, 2005.) The Court granted Defendant Bank of America's Motion to Dismiss as to Plaintiff's claim under O.C.G.A. § 11–3–406. (*Id.*)

On February 13, 2006, Defendant Wachovia filed its Motions for Summary Judgment and Oral Argument, and Defendant Bank of America filed its Motions for Summary Judgment and Oral Argument. On March 6, 2006, Plaintiff filed responses opposing Defendants Motions for Summary Judgment, and Defendants have filed their replies. Consequently, Defendants' Motions are now ripe for resolution by the Court.

## II. Motions for Summary Judgment

### A. Summary Judgment Standard

Federal Rule of Civil Procedure 56(c) authorizes summary judgment when all "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R.Civ.P. 56(c). In short, everything in the record must demonstrate the absence of a genuine issue of material fact. *Herzog v. Castle Rock Entm't,* 193 F.3d 1241, 1246 (11th Cir.1999).

The party seeking summary judgment bears "the burden of demonstrating the satisfaction of this standard, by presenting 'pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any' that establish the absence of a genuine, material factual dispute." *Bochese v. Town of Ponce Inlet,* 405 F.3d 964, 975 (11th Cir.2005) (quoting Fed.R.Civ.P. 56(c)), *cert. denied,* — U.S. ——, 126 S.Ct. 377, 163 L.Ed.2d 164 (2005). Once the moving party has supported its motion adequately, the non-movant has the burden of showing summary judgment is improper by coming forward with specific facts that demonstrate the existence of a genuine issue for trial. *Castleberry v. Goldome Credit Corp.,* 408 F.3d 773, 786 (11th Cir.2005).

When evaluating a motion for summary judgment, the Court must view the evidence and all factual inferences in the light most favorable to the party opposing the motion. *Harris v. Coweta County, Ga.,* No. 03–15094, 2005 WL 3501588, at *1

(11th Cir. Dec.23, 2005). The Court also must also "construe 'all reasonable doubts about the facts in favor of the non-movant.'" *Michael Linet, Inc. v. Vill. of Wellington, Fla.,* 408 F.3d 757, 761 (11th Cir. 2005) (quoting *Browning v. Peyton,* 918 F.2d 1516, 1520 (11th Cir.1990)). And "[i]f reasonable minds might differ on the inferences arising from undisputed facts, then the court should deny summary judgment.'" *St. Charles Foods, Inc. v. Am.'s Favorite Chicken Co.,* 198 F.3d 815, 819 (11th Cir.1999) (quoting *Warrior Tombigbee Transp. Co. v. M/V Nan Fung,* 695 F.2d 1294, 1296–97 (11th Cir.1983)(alteration in original)). Further, "[i]ssues of credibility and the weight afforded to certain evidence are determinations appropriately made by a finder of fact and not a court deciding summary judgment.'" *Miller v. King,* 384 F.3d 1248, 1259 (11th Cir.2004) (quoting *McCormick v. City of Fort Lauderdale,* 333 F.3d 1234, 1240 n. 7 (11th Cir.2003)). Finally, the Court does not make factual determinations. *Jones v. Am. Gen. Life Ins. Co.,* 370 F.3d 1065, 1069 n. 1 (11th Cir.2004) (citing *Wooden v. Bd. of Regents of Univ. Sys. of Ga.,* 247 F.3d 1262, 1271 n. 9 (11th Cir.2001)).

In addition to materiality, the Court also must consider the genuineness of the alleged dispute. *Graham v. State Farm Mut. Ins. Co.,* 193 F.3d 1274, 1282 (11th Cir.1999). "A dispute is genuine 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Id.* (quoting *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)). The nonmovant "'must do more than show that there is some metaphysical doubt as to the material facts.'" *Id.* (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986)). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Matsushita,*

475 U.S. at 587, 106 S.Ct. 1348 (quoting *First Nat'l Bank v. Cities Serv. Co.,* 391 U.S. 253, 289, 88 S.Ct. 1575, 20 L.Ed.2d 569 (1968)). The standard for summary judgment thus mirrors the "standard necessary to direct a verdict: 'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" *Graham,* 193 F.3d at 1282 (quoting *Anderson,* 477 U.S. at 251–52, 106 S.Ct. 2505).

Using this standard, the Court evaluates Defendant Wachovia's Motion for Summary Judgment, and then evaluates Defendant Bank of America's Motion for Summary Judgment.

**B. Defendant Wachovia's Motion for Summary Judgment**

Defendant Wachovia argues that Plaintiff is barred from recovering for the forged checks because it failed to report the forgeries to Defendant Wachovia within the statutory period. Defendant Wachovia also argues that Plaintiff's conversion claims are specifically barred by O.C.G.A. § 11–3–420(a). Plaintiff argues that genuine issues of fact remain as to whether it reasonably should have discovered the forgeries and whether Defendant Wachovia was negligent and did not exercise ordinary care with regard to the checks. Plaintiff contends that it promptly reviewed its monthly account statements and that the copies of the cancelled checks sent by Defendant Wachovia were reduced in size, making it difficult for Plaintiff to distinguish a forged signature from an authorized signature.

**1. Application of § 11–4–406**

■ A bank may charge its depositors only for those items that are "properly payable." O.C.G.A. § 11–4–401(a). "It may not charge an account for a forged check and is, in general, strictly liable for

paying on a forged check.". *Eason Publ'ns, Inc. v. NationsBank of Ga.,* 217 Ga.App. 726, 727, 458 S.E.2d 899, 901 (1995). When a bank does charge a customer for an improperly paid item and the bank sends the customer an account statement showing payment, the responsibilities and liabilities of the bank and customer are governed by O.C.G.A. § 11–4–406. *Id.* at 727–28, 458 S.E.2d 899; 485 S.E.2d at 901.

Under O.C.G.A. § 11–4–406(c),

If a bank sends or makes available a statement of account or items pursuant to subsection (a) of this Code section, the customer must exercise reasonable promptness in examining the statement or the items to determine whether any payment was not authorized because of an alteration of an item or because a purported signature by or on behalf of the customer was not authorized. If, based on the statement or items provided, the customer *should reasonably have discovered* the unauthorized payment, the customer must promptly notify the bank of the relevant facts.

O.C.G.A. § 11–4–406(c) (emphasis added). Additionally, under subsection (d), if the bank proves that the customer failed to comply with the duties imposed on the customer by subsection (c) above, the customer may be precluded from asserting against the bank:

(1) The customer's unauthorized signature or any alteration on the item, if the bank also proves that it suffered a loss by reason of the failure; and

(2) The customer's unauthorized signature or alteration by the same wrongdoer on any other item paid in good faith by the bank if the payment was made before the bank received notice from the customer of the unauthorized signature or alteration and after the customer had been afforded a reasonable period of time, not exceeding 30 days, in

Which to examine the item or statement of account and notify the bank.

O.C.G.A. § 11–4–406(d)(1)–(2). But, under subsection (e), if the precluded customer proves that the bank failed to exercise ordinary care in paying the item and that the failure substantially contributed to loss, the loss is allocated between the customer precluded and the bank asserting the preclusion according to the extent to which the failure of the customer to comply with subsection (c) [above] and the failure of the bank to exercise ordinary care contributed to the loss. O.C.G.A. § 11–4–406(e).

██ Under subsection (f), however, regardless of the care or lack of care taken by the bank *or* the customer, "a customer who does not within 60 days after the statement or items are made available to the customer … discover and report the customer's unauthorized signature on or any alteration on the face of the item … is precluded from asserting against the bank the unauthorized signature … or alteration." O.C.G.A. § 11–4–406(f). "These provisions operate similarly to a statute of limitation and protect the bank from facing suit over forgeries for an indefinite period of time." *Eason Publ'ns, Inc.,* 217 Ga.App. at 728, 458 S.E.2d at 901; *see also* 6C Lawrence, Lawrence's Anderson on the Uniform Commercial Code § 4–406:107 (3d ed. 1998) ("The time limitations of UCC § 4–406 are a substantive bar that destroy the right to sue the bank, regardless of the theory on which the plaintiff brings suit."). To avail itself of this cut-off, the bank must first give the customer a statement showing items paid "in good faith." *Eason Publ'ns. Inc.,* 217 Ga.App. at 728, 458 S.E.2d at 901.

██ "Good faith" is defined as (1) "honesty in fact" and (2) "the observance of reasonable commercial standards of fair dealing." O.C.G.A. § 11–3–103(4). "Issues of good faith do not always present

jury questions. The facts of a case determine when it is possible to declare as a matter of law whether good faith can be established." *Eason Publ'ns. Inc.*, 217 Ga. App. at 728–29, 458 S.E.2d at 902. As to the second prong, "reasonable commercial standards *of fair dealing* are different from reasonable commercial standards of due care ... '... it is concerned with the fairness of conduct rather than the care with which an act is performed. Failure to exercise ordinary care is an entirely different concept than failure to deal fairly ....'" *Gerber & Gerber. P.C. v. Regions Bank,* 266 Ga.App. 8, 11, 596 S.E.2d 174, 177 (2004) (emphasis in original) (citing U.C.C. § 3–103 cmt. 4 (2003)); *see also* 2 White & Summers, Uniform Commercial Code § 17–6 (4th ed.1995) (warning that "the issue is one of 'unfairness' not of 'negligence' ").

In *Eason Publications, Inc. v. NationsBank of Georgia,* the Georgia Court of Appeals held that allegations that a bank did not verify a customer's signatures did not constitute evidence that the bank paid forged checks without "honesty in fact." 217 Ga.App. at 728–29, 458 S.E.2d at 902; *see also* 1A Lawrence, *supra,* § 1–203:49 ("[T]he claim of the depositor that the bank acted in bad faith will be denied when there [is] no evidence that the bank had not acted with honesty in fact."). In *Eason Publications, Inc.,* a business' comptroller embezzled close to $1 million, in part by forging the signature of the business' secretary/treasurer on a number of checks made payable to himself, and the business sought recovery from its bank. 217 Ga.App. at 728–29, 458 S.E.2d at 902. The Georgia Court of Appeals held that the transactions regarding which lack of good faith must be shown were paying the checks and debiting the customer's account, and that the sixty-day maximum set by § 11–4–406(f) applied so that summary judgment was proper as to checks reported on statements sent more than sixty days before the customer reported the forgeries. *Id.; see also Vickers v. Broxton State Bank,* 230 Ga.App. 170, 495 S.E.2d 645 (1998) (holding that evidence that plaintiff was new customer and bank had long-term relationship with wrongdoer did not give rise to inference that bank treated plaintiff dishonestly or lacked good faith when paying forged checks and debiting plaintiff's account). Furthermore, the *Eason* Court held that the bank was not entitled to summary judgment as to the checks reported on statements sent less than sixty days before the business reported the forgeries because the evidence did not establish that the bank was acting consistently with general banking usage and a factual issue remained as to the bank's exercise of ordinary care. 217 Ga. App. at 728–29, 458 S.E.2d at 902.

In *Gerber & Gerber, P.C., v. Regions Bank,* the Georgia Court of Appeals held that a factual question existed when a bank violated reasonable commercial standards of fair dealing by accepting checks made payable to a law firm for deposit into a firm employee's personal account. 266 Ga.App. at 13, 596 S.E.2d at 179. The *Gerber* Court reasoned that because the bank serviced the employee's personal account and the firm's business accounts and knew that the firm normally placed a restrictive endorsement stamp on checks made payable to the firm, the bank was on heightened notice of the irregularity of the endorsements on the checks deposited by the employee and therefore the bank could be held to have acted unfairly toward the firm by not inquiring into the legitimacy of the checks' endorsements. 266 Ga.App. at 12, 596 S.E.2d at 179.

### a. Checks Made Available to Plaintiff More Than Sixty Days Prior to Reporting Forgeries to Defendant Wachovia

For the following reasons, the Court finds that no genuine issue of mate-

rial fact remains as to whether Defendant Wachovia acted in good faith in paying the checks and debiting Plaintiff's Account and as to whether Defendant Wachovia made statements or items of Plaintiff's Account available to Plaintiff. The Court therefore holds as a matter of law that Defendant Wachovia is not liable for the forged checks reported through statements of account or items sent more than sixty days before September 24, 2002, or the date that Plaintiff reported Ms. Henry's forgeries to Defendant Wachovia.

First, there is no evidence that Defendant Wachovia treated Plaintiff dishonestly or paid the forged checks without "honesty in fact." The forged checks did not contain any obvious alteration, were actual checks taken from Plaintiff by Ms. Henry, were made payable to Ms. Henry, and were purportedly signed by Ms. Lange and Mr. Ownbey, authorized signatories on Plaintiff's Account. Any failure by Defendant Wachovia to verify those signatures does not reflect on its good faith in paying the checks and debiting Plaintiff's Account. The Court therefore holds that Defendant Wachovia may benefit from the protections afforded to banks under O.C.G.A. § 11–4–406(f).

Second, Defendant Wachovia made the statements of account and imaged copies of checks "available" to Plaintiff. Although Defendant Wachovia initially returned copies of Plaintiff's cancelled checks, it switched to sending reduced copies of Plaintiff's checks with Plaintiff's statements of account. There is no evidence that Plaintiff protested this change or requested that Defendant Wachovia again return Plaintiff's cancelled checks. Additionally, the evidence shows that Plaintiff could request full-sized faxes of the front and back of a particular cancelled check. Indeed, this is how Plaintiff discovered Ms. Henry's embezzlement. Under those circumstances, the fact that Defendant Wachovia provided Plaintiff with reduced copies of checks does not excuse Plaintiff's failure to give timely notice.

Third, Defendant Wachovia cannot be held liable for fraudulent checks made "available" to Plaintiff by statements of account or imaged copies more than sixty days prior the date Plaintiff notified Defendant Wachovia of the forgeries. Under O.C.G.A. § 11–4–406(f), without regard to care or lack of care by Plaintiff or Defendant Wachovia, Plaintiff is precluded from asserting Ms. Henry's unauthorized signature against Defendant Wachovia as to those checks. Plaintiff contends that it notified Defendant Wachovia of Ms. Henry's forgeries on September 24, 2002. Plaintiff argues, however, that there are questions of fact as to what date Plaintiff received its statements of account and imaged copies from Defendant Wachovia. Give this dispute, the Court simply holds that Plaintiff may not recover against Defendant Wachovia for forged checks made available to Plaintiff through statements of account or imaged copies more than sixty days prior to September 24, 2002, or the date that Plaintiff notified Defendant Wachovia of Ms. Henry's forgeries.

The Court therefore holds as a matter of law that Defendant Wachovia is not liable for checks fraudulently signed by Ms. Henry which were made available to Plaintiff more than sixty days prior to September 24, 2002, or the date that Plaintiff notified Defendant Wachovia of Ms. Henry's fraud.[1] Consequently, the Court grants Defendant Wachovia's Motion for

---

1. The Court observes that if Plaintiff and Defendant Wachovia cannot agree as to what checks were made available to Plaintiff through statements of account or imaged copies sixty days prior to September 24, 2002, then that issue will be a factual question reserved for the factfinder.

Summary Judgment with regard to checks made available to Plaintiff more than sixty days prior to September 24, 2002, or the date that Plaintiff notified Defendant Wachovia of Ms. Henry's forgeries.

### b. Checks Made Available to Plaintiff Less Than Sixty Days Prior Reporting Forgeries to Defendant Wachovia

■ Defendant Wachovia argues that Plaintiff's failure to discover and report Ms. Henry's forgeries within thirty days of the receipt of the imaged checks bars Plaintiff's recovery. Defendant Wachovia further argues that Plaintiff's failure to report the first items forged by Ms. Henry within the above time frame also bars Plaintiff from recovering for additional, later forgeries by Ms. Henry. Plaintiff argues that it reconciled its bank statements within a week of their receipt, but contends that the copies of the cancelled checks were reduced in size, making it difficult to distinguish a forged signature from an authorized signature. Plaintiff also argues that § 11–4–406(e) applies and argues that its degree of care must be compared to Defendant Wachovia's degree of care. Plaintiff contends that Defendant Wachovia's failure to verify the signatures on any of the forged checks is sufficient to raise a factual issue regarding Defendant Wachovia's exercise of ordinary care.

For the following reasons, the Court holds that § 11–4–406(d)(2) applies to the facts of this case, but that a genuine issue exists as to whether Defendant Wachovia failed to exercise ordinary care in paying the remaining checks and as what extent Plaintiff and Defendant Wachovia each contributed to the loss.

First, even viewing the facts in the light most favorable to Plaintiff, Plaintiff should reasonably have discovered the unauthorized payment based on the statements of account and the imaged copies returned by Defendant Wachovia. It is undisputed that when the imaged copies *arrived* at Plaintiff's business, Ms. Henry's name was written in the payee portion of the forged checks. In the November 1, 2001, bank statement attached to Mr. Ownbey's Affidavit, Ms. Henry's name is typed and clearly visible in the payee portion of forged checks 3155 and 3156. (Ownbey Aff. at 5.) Additionally, the check portion of the account statement shows that the checks were for 68.39 each and cashed on November 16 and 23, 2001, respectively. (*Id.* at 9.) Although Plaintiff may not have been able to detect the forged signatures on the reduced check images, it reasonably should have detected the unauthorized payment by examining each check's payee information and by examining the checking statement, which clearly shows the amount associated with each check number. Indeed, Plaintiff discovered Ms. Henry's fraud when it received an unaltered $10,000 check written to Ms. Henry as the payee. (Ownbey Dep. at 50–51.) Plaintiff itself argues that Ms. Henry's weekly paycheck from Plaintiff was only $728.13 and that Defendant Bank of American should have known that the deposits by Ms. Henry of checks significantly above that amount were highly irregular. (Pl.'s Br. Resp. Def. Bank of America Mot. Summ. J. at 9.) Likewise, Plaintiff should have detected two unauthorized checks of more than $6,000 each, clearly made payable to Ms. Henry in November 2001. The Court therefore holds that no reasonable person could find that Plaintiff did not have adequate information to detect Ms. Henry's unauthorized payments within a reasonable time after Plaintiff received its November 2001 statement of account and imaged check copies.

Second, although the Court holds that Defendant Wachovia has proven that Plaintiff failed to comply with its duties under § 11–4–406(c), the Court also finds

that a genuine issue of material fact remains as to whether Defendant Wachovia failed to exercise ordinary care in paying the remaining forged items not covered by § 11–4–406(f). Plaintiff has presented evidence that Defendant Wachovia did not verify the signature on any of the forged checks in question. Further, Defendant Wachovia has not made any showing that it complied with local industry standards or acted consistently with general banking usage. Because Plaintiff has provided evidence that Defendant Wachovia failed to exercise ordinary care in paying the forged checks, the comparative negligence test set forth in § 11–4–406(e) applies. Viewing the evidence in a light most favorable to Plaintiff, as the Court must, the Court therefore finds that a factual question remains as to whether Defendant Wachovia's verification and other procedures constituted ordinary care as to the remaining checks at issue and to what extent, if any, Defendant Wachovia's alleged failures contributed to the loss.

The Court therefore holds that genuine factual issues exist as to whether Defendant Wachovia failed to exercise ordinary care in paying the remaining checks and to what extent Plaintiff and Defendant Wachovia each contributed to the loss. Consequently, the Court denies Defendant Wachovia's Motion for Summary Judgment with regard to checks made available to Plaintiff less than sixty days prior to September 24, 2002, or the date that Plaintiff notified Defendant Wachovia of Ms. Henry's forgeries.

## 2. Plaintiff's Conversion Claim

Defendant Wachovia also argues that O.C.G.A. § 11–3–420(a) bars Plaintiff's conversion claim. Plaintiff did not address this argument specifically in response to Defendant Wachovia's Motion for Summary Judgment.

■ As an initial matter, the Court notes that Plaintiff's failure to respond to Defendant Wachovia's argument that it is entitled to summary judgment with regard to Plaintiff's conversion claim constitutes Plaintiff's abandonment of that claim. Under Local Rule 7.1 of the Northern District of Georgia, Defendant Wachovia's Motion for Summary Judgment is unopposed on that ground. *See* N.D. Ga. R. 7.1; *Welch v. Delta Air Lines, Inc.*, 978 F.Supp. 1133, 1137 (N.D.Ga.1997) ("Plaintiff's failure to respond to Defendant's argument alone entitles Defendant to summary judgment on these claims.").

In any event, Plaintiff's conversion claim fails for the following reasons. O.C.G.A. § 11–3–420(a) provides:

(a) The law applicable to conversion of personal property applies to instruments. An instrument is also converted if it is taken by transfer, other than a negotiation, from a person not entitled to enforce the instrument or a bank makes or obtains payment with respect to the instrument for a person not entitled to enforce the instrument or receive payment. An action for conversion of an instrument may not be brought by (i) the issuer or acceptor of the instrument; or (ii) a payee or indorsee who did not receive delivery of the instrument either directly or through delivery to an agent or a co-payee.

O.C.G.A. § 11–3–420(a). Subsection (a), by its plain terms, bars Plaintiff, the issuer of the forged checks, from bringing an action for conversion relating to the forged checks. *Id.* Plaintiff's conversion claim against Defendant Wachovia therefore fails to the extend that Plaintiff bases that claim under the provisions of the Uniform Commercial Code. *Id.*

Further, to the extent that Plaintiff attempts to assert a common law claim for conversion, § 11–3–420 preempts such a

claim because § 11–3–420 clearly addresses conversion. *See Jacobs v. Metro Chrysler–Plymouth, Inc.*, 125 Ga.App. 462, 467, 188 S.E.2d 250, 253 (1972) (applying general provisions of law where not displaced by Uniform Commercial Code); *Halifax Corp. v. Wachovia Bank*, 268 Va. 641, 656–57, 604 S.E.2d 403, 410–11 (2004) (holding that common law action for conversion displaced by Uniform Commercial Code in circumstances where § 8.3A–420 applied). Plaintiff thus cannot pursue a common law claim for conversion against Defendant Wachovia.

The Court therefore holds as a matter of law that Plaintiff cannot maintain a conversion claim against Plaintiff. Consequently, the Court grants Defendant Wachovia's Motion for Summary Judgment as to Plaintiff's conversion claim.

### C. Defendant Bank of America's Motion for Summary Judgment

Defendant Bank of America argues that it was a holder in due course and that Plaintiff failed to report the unauthorized signatures to Defendant Bank of America within sixty days of receiving copies of those checks from Defendant Wachovia. Plaintiff argues that factual questions remain as to whether Defendant Bank of America is a holder in due course, acted in good faith, and exercised ordinary care. Plaintiff also argues that § 11–4–406(f) does not bar its claims. Plaintiff contends that it was required to give notice of the forgeries only to Defendant Wachovia, the bank sending Plaintiff's Account statements, and that § 11–4–406(f) does not require Plaintiff to also notify Defendant Bank of America, the depository bank.

### 1. Plaintiff's § 11–3–306 Claim

 Defendant Bank of America argues that it fits the definition of a holder in due course set forth by O.C.G.A. § 11–3–302. Defendant Bank of America contends that the checks did not bear such apparent evidence of forgery as to call into question their authenticity and that Defendant Bank of America took the checks in good faith. Plaintiff agrees that the checks at issue did not bear apparent evidence of forgery or alteration, but Plaintiff argues that Defendant Bank of America had the means to verify the authenticity of the signatures on those checks. Plaintiff also argues that a factual issue remains as to whether Defendant Bank of America acted in good faith. Plaintiff contends that Defendant Bank of America's DARTS system should have put Defendant Bank of America on notice that Ms. Henry was engaged in fraudulent activities.

O.C.G.A. § 11–3–306 provides that:

A person taking an instrument, other than a person having rights of a holder in due course, is subject to a claim of a property or possessory right in the instrument or its proceeds, including a claim to rescind a negotiation and to recover the instrument or its proceeds. *A person having rights of a holder in due course takes free of the claim to the instrument.*

O.C.G.A. § 11–3–306 (emphasis added). As defined by O.C.G.A. § 11–3–302, the holder of an instrument is a "holder in due course" if:

(1) The instrument when issued or negotiated to the holder does not bear such apparent evidence of forgery or alteration or is not otherwise so irregular or incomplete as to call into question its authenticity; and

(2) The holder took the instrument:

(i) For value;

(ii) In good faith;

(iii) Without notice that the instrument is overdue or has been dishonored or that there is an uncured default with respect to payment of another instrument issued as part of the same series;

(iv) Without notice that the instrument contains an unauthorized signature or has been altered;

(v) Without notice of any claim to the instrument described in Code Section 11–3–306; and

(vi) Without notice that any party has a defense or claim in recoupment described in subsection (a) of Code Section 11–3–305.

O.C.G.A. § 11–3–302.

As discussed *supra* Part II.B.1., "good faith" is defined as (1) "honesty in fact" and (2) "the observance of reasonable commercial standards of fair dealing." O.C.G.A. § 11–3–103(4). "Issues of good faith do not always present jury questions. The facts of a case determine when it is possible to declare as a matter of law whether good faith can be established." *Eason Publ'ns, Inc.*, 217 Ga.App. at 728–29, 458 S.E.2d at 902. And, "reasonable commercial standards *of fair dealing* are different from reasonable commercial standards of due care ... '... it is concerned with the fairness of conduct rather than the care with which an act is performed. Failure to exercise ordinary care is an entirely different concept than failure to deal fairly ....' " *Gerber & Gerber, P.C.*, 266 Ga.App. at 11, 596 S.E.2d at 177 (emphasis in original) (citing U.C.C. § 3–103 cmt. 4 (2003)).

In *Eason Publications, Inc.*, the Georgia Court of Appeals held that allegations that a bank did not verify a customer's signatures did not constitute evidence that the bank paid forged checks without "honesty in fact." *Id.* In *Gerber & Gerber, P.C.*, however, the Georgia Court of Appeals held that whether the bank acted fairly remained an issue because the bank was on heightened notice that check endorsements were irregular where the bank serviced both the forger's and the plaintiff's accounts, where the bank accepted checks made payable to the plaintiff for deposit into the forger's personal account, and where a restrictive endorsement stamp was normally placed on checks made payable to the plaintiff. 266 Ga.App. at 13, 596 S.E.2d at 179.

Plaintiff argues that the question at issue is not whether Defendant Bank of America knew of Ms. Henry's scheme, but whether there was anything with respect to Ms. Henry's transactions that would put Defendant Bank of America on notice that Ms. Henry was engaged in fraud. Plaintiff points to Ms. Henry's irregular deposit activity and contends that, despite the DARTS program, Defendant Bank of America failed to discover Ms. Henry's scheme and failed to investigate the checks at issue, thus raising a question as to Defendant Bank of America's good faith. Although the Parties focus on § 11–3–302's good faith requirement, the Court analyzes all the applicable statutory requirements in turn. To determine whether Defendant Bank of America acted in conformity with reasonable commercial standards of fair dealing, the Court considers the fairness of Defendant Bank of America's actions, rather than any negligence on its part.

For the following reasons, the Court finds that no genuine issue of material fact exists as to whether Defendant Bank of America is a holder is due course as defined by § 11–3–302. Defendant Bank of America thus is not liable to Plaintiff under § 11–3–306.

First, Plaintiff agrees that the checks at issue did not bear apparent evidence of forgery or alteration which would call into question the checks' authenticity. (DBOASMF ¶ 9; PBOASMF ¶ 9; Pl.'s Br. Resp. Def. Bank of America's Mot. Summ. J. at 5.) Consequently, the Court finds that no material issue of fact exists as to the requirement set forth under § 11–3–302(1).

Second, viewing all facts in a light most favorable to Plaintiff, it is undisputed that Defendant Bank of America took the checks for value and credited the amounts to Ms. Henry's account (Am. Compl. ¶ 12; DBOASMF ¶ 5; PBOASMF ¶ 5). Consequently, the Court finds that no material issue of fact exists as to the value requirement set forth under § 11–3–302(2)(i).

Third, viewing all the facts in a light most favorable to Plaintiff, there is no genuine issue of material fact with regard to whether Defendant Bank of America accepted the checks at issue in good faith, i.e., with honesty in fact and the observance of reasonable commercial standards of fair dealing. It is undisputed that Defendant Bank of America had no actual notice of Ms. Henry's embezzlement scheme or that the checks contained unauthorized signatures. (DBOASMF ¶ 8; PBOASMF ¶ 8.) Plaintiff first informed Defendant Bank of America of the forgery when Plaintiff filed this lawsuit on December 8, 2004. (DBOASMF ¶ 24; PBOASMF ¶ 24; Notice of Removal ¶ 2.) Additionally, regardless of whether Defendant Bank of America had the means to verify Plaintiff's signatures, as in *Eason Publications, Inc.,* Defendant Bank of America's failure to verify Plaintiff's signatures does not constitute evidence that Defendant Bank of America acted without "honesty in fact." The undisputed evidence thus shows Defendant Bank of America's honesty in fact.

Furthermore, unlike in *Gerber & Gerber, P.C.,* Ms. Henry and Plaintiff were *not* both customers of Defendant Bank of America and Ms. Henry was *not* depositing checks made payable to Plaintiff into her personal account. There is no evidence that Defendant Bank of America had heightened notice of Plaintiff's compensation practices or of Plaintiff's signature, and the undisputed evidence shows that Ms. Henry was depositing checks made payable to herself into her personal account and that those checks did not contain any obvious alterations or other obvious indications of forgery. (DBOASMF ¶¶ 5, 9; PBOASMF ¶¶ 5, 9; Pupello Aff. ¶ 4.)

Although Plaintiff does allege that Defendant Bank of America's DARTS system failed to identify Ms. Henry's irregular deposit activity, that evidence indicates, at most, that Defendant Bank of America may have acted in a negligent manner, but it does not indicate that Defendant Bank of America acted in an unfair or dishonest manner. The Court therefore finds that Plaintiff has not come forward with evidence demonstrating that Defendant Bank of America's failure to investigate Ms. Henry's account activity was dishonest or unfair, and thus was not honest in fact or did not conform to reasonable commercial standards of *fair dealing.* Plaintiff therefore cannot prevail on its arguments that Defendant Bank of America was not a holder in due course or lacked good faith in accepting the checks at issue. Consequently, the Court find that no material issue of fact exists as to the good faith requirement set forth under § 11–3–302(2)(ii).

Fourth, viewing all the evidence in a light most favorable to Plaintiff and for the same reasons set forth in the Court's good faith analysis above, Defendant Bank of America had no notice that there was an uncured default with respect to payment of any of the twenty-seven checks at issue. Additionally, it is undisputed that Defendant Bank of America had no actual notice of Ms. Henry's embezzlement scheme or that the checks contained unauthorized signatures. (DBOASMF ¶ 8; PBOASMF ¶ 8.) Consequently, the Court finds that no material issue of fact exists as to the notice requirement set forth under § 11–3–302(2)(iii).

Fifth, viewing all the evidence in a light most favorable to Plaintiff and for the same reasons set forth in the Court's good faith analysis above, Defendant Bank of America did not have notice that the checks at issue contained an unauthorized signature. Additionally, it is undisputed that Defendant Bank of America had no actual notice of Ms. Henry's embezzlement scheme or that the checks contained unauthorized signatures. (DBOASMF ¶ 8; PBOASMF ¶ 8.) Consequently, the Court finds that no material issue of fact exists as to the notice requirement set forth under § 11–3–302(2)(iv).

Sixth, viewing all the evidence in a light most favorable to Plaintiff and for the same reasons set forth in the Court's good faith analysis above, Defendant Bank of America had no notice of any claim to the checks by Plaintiff. Additionally, it is undisputed that Defendant Bank of America had no actual notice of Ms. Henry's embezzlement scheme or that the checks contained unauthorized signatures. (DBOASMF ¶ 8; PBOASMF ¶ 8.) Consequently, the Court finds that no material issue of fact exists as to the notice requirement set forth under § 11–3–302(2)(v).

Seventh, viewing all the evidence in a light most favorable to Plaintiff and for the same reasons set forth in the Court's good faith analysis above, Defendant Bank of America had no notice that any party had a defense or claim in recoupment under § 11–3–305. Consequently, the Court finds that no material issue of fact exists as to the notice requirement set forth under § 11–3–302(2)(vi).

For the above reasons, the Court finds that no genuine issue of material fact remains regarding Defendant Bank of America's status as a holder in due course as defined by § 11–3–302. The Court therefore holds as a matter of law that Defendant Bank of American takes free claim to the checks at issue. Consequently, the

Court grants Defendant Bank of America's Motion for Summary Judgment as to Plaintiff's claim asserted under § 11–3–306.

### 2. Application of § 11–4–406

Defendant Bank of America argues that the sixty-day limitation imposed by § 11–4–406 limits the liability of both drawee and depository banks. Defendant Bank of America contends that Plaintiff did not provide it with notice of the unauthorized signatures until December 2004, clearly more than sixty days after Plaintiff received copies of Ms. Henry's forged checks from Defendant Wachovia. Plaintiff argues that it complied with § 11–4–406 by notifying Defendant Wachovia in September 2001, within the statutory period for some checks, and that Plaintiff is not required to give Defendant Bank of America such notice.

As discussed *supra* Part II.B., pursuant to O.C.G.A. § 11–4–406(f), a customer is precluded from asserting the customer's unauthorized signature or alteration against the bank if that customer did not report the unauthorized signature within sixty days after receiving the account statement or items made available to the customer. O.C.G.A. § 11–4–406(f). In *Trust Co. Bank v. Atlanta IBM Employees Federal Credit Union*, 245 Ga. 262, 264 S.E.2d 202 (1980), the Georgia Supreme Court held that a customer could not maintain a suit against either the collecting or drawee banks where the undisputed facts showed that the customer did not notify its bank within a reasonable period of time and did not notify the collecting bank. The *Trust Co.* Court acknowledged that the two banks should not have honored the checks at issue, 245 Ga. at 264, 264 S.E.2d at 204, but cited the official comment to Uniform Commercial Code § 4–406 to ex-

plain the policy behind limiting the banks' liability to the customer:

> ... in the great preponderance of cases the customer will learn of the [forgery] within this time and if in any exceptional cases he does not, the balance in favor of a mechanical termination of the liability of the bank outweighs what few residuary risks the customer may still have .... The forty existing statutes on the subject as well as Section 4–406 evidence a public policy in favor of imposing on customers the duty of prompt examination of their bank statements and the notification of banks of forgeries and alterations and in favor of reasonable time limitations on the responsibilities of banks for payment of forged or altered items.

*Id.* at 264; 264 S.E.2d at 203 (quoting U.C.C. § 4–406 cmt. (1977)). Plaintiff argues that § 11–4–406 specifies giving notice only to the bank sending the statement of account and that *Trust Co.* cannot also stand for the proposition that notice must be given to a depository bank or a bank not sending such account information. Plaintiff argues that the *Trust Co.* Court focused on the sufficiency of notice to the customer's bank—the drawee bank—and that when the Georgia Supreme Court concluded such notice was insufficient, then the customer's claim against the collecting bank became moot.

■ For the following reasons, the Court finds Plaintiff's interpretation of § 11–4–406 and *Trust. Co.* unpersuasive and finds that § 11–4–406's notice requirements apply to any bank a customer chooses to pursue. First, as discussed by the Georgia Supreme Court in *Trust Co.,* the policy behind § 11–4–406 is to place a definite duration on the ability to proceed against banks where customers do not promptly notify banks of forgeries and alterations, and where customers thereby limit the banks' ability to minimize loss.

Second, the customer in *Trust Co.* sued both the drawee and the collecting bank and there is nothing in the *Trust Co.* opinion indicating that the Georgia Supreme Court did not consider the suit with regard to both defendants. The Georgia Supreme Court conducted no fact finding itself, but simply stated that the facts regarding notice were undisputed and that neither the drawee bank nor the collecting bank was liable for wrongful payment. The Court therefore interprets *Trust Co.* to stand for the proposition that § 11–4–406 precludes a customer from asserting an unauthorized signature or alteration against any banks, drawee or depository, that are not notified of such within sixty days after the statement of account or items revealing the forgery or alteration were made available to the customer. *Cf. Cagle's, Inc. v. Valley Nat'l Bank,* 153 F.Supp.2d 1288, 1292–93 (M.D.Ala.2001) (holding that Alabama's § 4–406(f) notice requirement applied to depository banks and customer's failure to provide depository bank with requisite notice barred claim).

The Court finds that no genuine issue of material fact remains regarding Plaintiff's failure to notify Defendant Bank of America of Ms. Henry's forgeries within sixty days after Defendant Wachovia made Plaintiff's Account statements and items available to Plaintiff. For the same reasons discussed *supra* Part II.B.1.a., Defendant Wachovia made the statements of account and imaged copies of Ms. Henry's forged checks "available" to Plaintiff. Additionally, it is undisputed that Plaintiff did not notify Defendant Bank of America of the forgeries until Plaintiff filed this lawsuit on December 8, 2004, (Ownbey Dep. at 140; Notice of Removal ¶ 2), more than two years after Plaintiff discovered Ms. Henry's embezzlement scheme and notified Defendant Wachovia on September 24, 2002. Plaintiff's notice to Defendant Bank of America was clearly not within the sixty

day period proscribed by § 11–4–406(f) for any of Ms. Henry's forged checks. The Court therefore holds as a matter of law that Plaintiff is precluded from asserting Ms. Henry's unauthorized signature against Defendant Bank of America as to all twenty-seven forged checks. Consequently, the Court grants Defendant Bank of America's Motion for Summary Judgment as to Plaintiff's remaining claim asserted under § 11–3–306.

### III. Defendants' Motions for Oral Argument

"Motions will be decided by the court without oral hearing, unless a hearing is ordered by the court." N.D. Ga. R. 7.1(E). The Court determines that a hearing on the above issues is not required and therefore denies Defendant Wachovia's and Defendant Bank of America's Motions for Oral Argument.

### IV. Conclusion

ACCORDINGLY, the Court **GRANTS IN PART AND DENIES IN PART** Defendant Wachovia's Motion for Summary Judgment [90]. The Court **GRANTS** Defendant Wachovia's Motion with regard to statements of account or items reflecting the embezzlement made available to Plaintiff more than sixty (60) days prior to September 24, 2002, or the date Plaintiff notified Wachovia of the forgeries, **DENIES** the Motion with regard to such account information made available to Plaintiff less than sixty (60) days prior to that date, and **GRANTS** the Motion with regard to Plaintiff's conversion claim. The Court **DENIES** Defendant Wachovia's Motion for Oral Argument [91]. The Court **GRANTS** Defendant Bank of America's Motion for Summary Judgment [92], and **DENIES** Defendant Bank of America's Motion for Oral Argument [96].

The Court **DIRECTS** Plaintiff and Defendant Wachovia to file their proposed pretrial order within thirty (30) days. The Court **DIRECTS** the Clerk to place this case on the Court's next available trial calendar. All Motions in limine are due no later than seven (7) business days prior to the date the trial of this case is scheduled to begin.